The Chicago and Eastern Illinois Railroad Company

*v.*

Charles S. Wiltse.

*Filed at Ottawa March 27, 1886.*

1. Eminent domain—*as to an appropriate and permissible exercise of the power—as a legislative or judicial question.* The question of the necessity for the exercise of the right of eminent domain, and in what cases it may be exercised, within constitutional restrictions, is legislative, and not judicial; and when the power has been delegated to a corporation, its exercise, within the scope and for the uses and purposes named in the legislative grant, will not be a proper subject for judicial interference or control, unless to prevent a clear abuse of power.

2. The question, however, of whether the use to which it is sought to appropriate the property is a public use or purpose, and whether such use or purpose will justify the exercise of the compulsory taking of private property under the statute and constitution, and, when the power is attempted to be exercised by a corporation, whether the power is delegated to it by the legislature, and whether the uses and purposes for which such power is sought to be exercised falls within the legislative grant of powers, are proper subjects of judicial determination.

3. Same—*the rule of strict construction—and its application, as to the use intended.* The taking of private property under the Eminent Domain act being in derogation of common right, the grant of power to corporations for its exercise will be strictly construed. Therefore, the mere fact that the building of lateral branch roads may add to the earnings of the main line of a railroad company, or increase its business, will not authorize such corporation to build the same under its charter, which fails to so provide.

4. The exercise of the right of eminent domain is subordinate to all statutory and constitutional restrictions on the subject, and to the further limitation that the courts which are authorized to entertain applications for its exercise, are clothed with ample power to prevent any abuses of the right.

Appeal from the County Court of Kankakee county; the Hon. James N. Orr, Judge, presiding.

The Chicago and Eastern Illinois Railroad Company, appellant, filed its petition in the county court of Kankakee county, praying for condemnation of certain lands belonging to appellee. The petition, as amended, alleged the incorporation of

29—116 Ill.

appellant, with power to construct a railroad from Chicago, through the intervening counties, to the city of Danville, Illinois; that it had located its line in accordance with its charter, and that such line passed over and across appellee's land, describing the portion sought to be taken with particularity. The petition contained in other respects the statutory requirements, and it was alleged therein that the "petitioner desires to appropriate and use said property for the purpose of building and constructing its said line of road, and represents that said property is necessary for the right of way, sidetracks and appurtenances required by petitioner in constructing and operating said road," and praying that compensation to appellee might be ascertained, etc. On the return day a motion was made by appellee to dismiss the petition, which was overruled. A cross-petition was then filed by appellee, under the statute, and a jury sworn to fix compensation, etc. After the petitioner had made its case, appellee renewed his motion to dismiss, which was again overruled, and at the conclusion of the hearing, and before the jury retired, the like motion was again made and overruled. The trial resulted in a verdict for $150 for land taken, and $1350 for damages to land not taken. Motion for a new trial overruled, and judgment on verdict in usual form in proceedings for condemnation. Appellant appealed to this court, assigning numerous errors. Appellee assigns cross-errors on the record, and asks their consideration.

On the trial appellant introduced evidence showing its incorporation under the general law of the State for the incorporation of railroad companies, and that appellant's railroad was built between Chicago and Danville, Illinois, by the Chicago, Danville and Vincennes Railroad Company, during the year A. D. 1872, under a private charter, passed by the legislature in A. D. 1865; that by conveyances under certain foreclosure proceedings, the title to said railroad was vested in the appellant company, which had been operating the rail-

road between Chicago and Danville for the past eight years. The point where the land was sought to be condemned was in the country, and it was conceded that appellant had thirty feet of land on its right of way, either side of its main track, level, and in every way suitable for a side-track, if one was needed at that place. It further appeared, that in 1884, about three-fourths of a mile from the main line, a bed of clay, very valuable for the manufacture of red pressed brick, had been discovered; that a company was formed for the manufacture of brick therefrom, and at the time of the trial over $100,000 had been expended in machinery, etc., for such manufacture; that a large number of brick were then on hand, ready for shipment, and that the machinery had a capacity of 40,000 brick per day; that the brick required careful handling, and it was impracticable to haul them in wagons, as the corners would get knocked off, and the value of the brick deteriorated or destroyed; that the principal market was Chicago, where they sold at $20 per thousand, and upwards; that the brick works were built as close to the track of appellant's road as would be profitable in handling the clay, and that the brick works company had made an arrangement with appellant to furnish the money to build the track from the main line to the brick works, and were to be repaid by a rebate of twenty-five per cent of all freights hauled for them, until repaid; that to get this freight it was necessary to build this spur or side-track; that the trains of appellant would, by the arrangement, run once each way over this track each day. A map or plat was also introduced by appellant, showing the proposed track running substantially at right angles with appellant's main line, and terminating at said brick works, and passing over appellee's land for something over a half mile. The appellant's general superintendent testified that the purpose of building this track was to maintain and help out the business of the road; it was necessary to enable the company to get this freight,—the

track might be used to shove cars on; that it was impracticable to get that freight without building this track, etc.

Mr. William Armstrong, for the appellant:

Of the necessity of a cross-petition to have damages to lands, not taken, assessed, see *Railroad Co.* v. *Mayrand,* 93 Ill. 592; *Railroad Co.* v. *Hopkins,* 90 id. 319; *Mix* v. *Railroad Co.* 67 id. 319; *Jones* v. *Railroad Co.* 68 id. 380; *Railroad Co.* v. *Sawyer,* 71 id. 361; *Bloomington* v. *Miller,* 84 id. 621.

The cross-errors question appellant's right to condemn this land. It was necessary to reach the new clay discovered, to construct this spur of the road. It is one of the incidents of the operation of a line of railroad. *Railroad Co.* v. *Dix,* 109 Ill. 237; *Fisher* v. *Railroad Co.* 104 id. 326.

Mr. H. K. Wheeler, and Mr. B. F. Gray, for the appellee:

The constitution only permits private property to be taken for a "public use." Taking land whereby to gain access to a brick yard, or rather private enterprise, is not for a "public use."

Grants to corporations being in derogation of common right, are to be strictly construed, and this especially when power is claimed which affects the ordinary rights of property. Cooley's Const. Lim. 530.

The courts have repeatedly held that land can not be taken to construct roads to coal fields. Cooley's Const. Lim. 531; *Young* v. *McKenzie,* 3 Ga. 44; *Taylor* v. *Porter,* 4 Hill, 146; *Railroad Co.* v. *Brainard,* 9 N. Y. 108.

So it has been held that a railroad company could not condemn land for manufacturing railroad cars. *Eldridge* v. *Smith,* 34 Vt. 484.

Necessity and a public use must in all cases exist in order to permit a railroad company to condemn land. *Tracy* v. *Railroad Co.* 80 Ky. 259.

This spur is not a side-track or appurtenance to the main line .

Mr. JUSTICE SHOPE delivered the opinion of the Court:

It will be unnecessary to discuss the errors assigned by appellant, as the determination reached on the cross-errors assigned will be conclusive of the case.

The petition, as amended, was in substantial compliance with the statute, and gave the court jurisdiction, and the motion first entered to dismiss, was, upon the record as it then stood, properly overruled.

The general act for the incorporation of railroads requires that the terminal points shall be designated and set out in the articles of incorporation, but no limitation is placed upon the company as to the location of its appurtenant tracks, such as side-tracks, turn-outs and switches. The right to locate and build such appurtenant tracks, within reasonable limits, must, of necessity, be left in the discretion of the company. The 18th section of the act referred to expressly provides that if the corporation is unable to agree with the owner for the purchase of real estate required for the purposes of this incorporation, or the transaction of its business, or for depots, station buildings, right of way, or any other lawful purpose connected with or necessary to the building, operating or running of its railroad, such corporation may acquire title by condemnation thereof, as provided by law. A large discretion, of necessity, must be lodged in the railroad company, to be exercised through its officers and agents, to determine where side-tracks, turn-outs and switches should be located, with a view to the convenient and successful operation of the main line of the company's road, and as to the amount of land actually requisite for that purpose; and the legislature has given such discretion, providing, however, that such appurtenant tracks for which land is sought to be condemned, shall be connected with the building, operating or running of the railroad, or necessary to such building, operating or running.

The question of the necessity for the exercise of the right of eminent domain, and in what cases it will be exercised, within the constitutional restrictions, is legislative and not judicial. And where the power has been delegated to an incorporation by the legislature, the exercise of that power by the incorporation, within the scope and for the uses and purposes named in the legislative grant, will not be a proper subject for judicial interference or control, unless to prevent a clear abuse of the power. The questions, however, of whether the use to which it is sought to appropriate the property is a public use or purpose, and whether such use or purpose will justify the exercise of the compulsory taking of private property under the statute and constitution, and, where the power is attempted to be exercised by an incorporation, whether the power is delegated to the corporation by the legislature, and whether the uses and purposes for which such power is sought to be exercised fall within the legislative grant of powers, are proper subjects of judicial determination. Dillon on Mun. Corp. 465; *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 Ill. 333; *South Chicago Railroad Co.* y. *Dix,* 109 id. 237; *Dunlap* v. *Mt. Sterling,* 14 id. 251; Cooley's Const. Lim. 537, *et seq.; St. Louis, etc., Railroad Co.* v. *Trustees,* 43 Ill. 306; *Chicago and Western Indiana Railroad Co. et al.* v. *Dunbar et al.* 100 id. 129; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511; *In re New York Central and H. Railroad Co.* 77 N. Y. 248; *Eldridge* v. *Smith,* 34 Vt. 484; *Bradley* v. *New York and New Haven Railroad Co.* 21 Conn. 305.

It is evident from the evidence in this case, that the sole use and purpose of the proposed track was to reach the brick works, situated between a half and three-quarters of a mile from appellant's railroad, and thereby create a feeder to its main line, and add to the value of its freights. There was no pretence that there was any necessity for any increased facilities in the locality of the proposed track, except for the

purpose of saving the hauling of brick from these brick works, and the increased traffic brought to appellant's main line by the building of this spur. True, the superintendent says this track could be used to store cars upon; but it is in the country, and there is no pretence that there is or will be any necessity for such use, or that it will be convenient to store cars at this point, or that the track was intended for such use. Besides, the track is shown to be designed for use by running cars over it every day. Indeed, so patent is it, from the record, that the proposed track was a spur road, intended for the use indicated, that the only statement by appellant's counsel, in his brief, of the use to which appellee's land was to be appropriated, is as follows: "The appellee being the owner of some land located between the railroad and the brick works, appellant filed this petition to condemn a strip thirty feet in width across his land, in order to build a railroad track from its main track to the brick works, as described." Toward the close of his argument, the counsel insists upon the great expense incurred in building up the brick works, the great volume of freight thereby produced, and the loss if compelled to move the brick from the kilns to the railroad in wagons, as reasons for the exercise of this compulsory power of taking appellee's land, and concludes: "To say that appellant has no power to build a spur to the works in order to move this vast volume of freight, is placing a narrow construction on the powers of appellant."

It is conceded, substantially, and the evidence abundantly shows the fact, that this proposed track in no way increases or adds to the facilities for transacting the business of the railroad appellant is authorized by its charter to build and operate, but on the contrary, by adding to the volume of its freights, would tend rather to embarrass the main line of road than otherwise. If this was a side-track, and was in some way necessary to or aided in the convenient and successful operation of appellant's railroad, the fact that it

serves the private use mentioned would not, as said by this court in *South Chicago Railroad Co.* v. *Dix, supra,* make it any the less necessary as a side-track; but there is no such pretence here, and the right to condemn appellee's land depends upon the right of appellant to build an independent branch road from its main line to the brick works, for the purpose of creating a feeder to its main line of road, or, as put by counsel, "to remove this vast volume of freight."

In no just sense can this proposed line be said to be connected with or necessary to the building, operating or running of appellant's railroad. The taking of private property under the eminent domain statutes is in derogation of common right, and the grant of power to incorporations for its exercise will be strictly construed. (Cooley's Const. Lim. 530, 531, and authorities cited.) The fact that the building of lateral branch roads may add to the earnings of the main line, or increase its business, will not authorize appellant to build the same under its charter, and condemn lands therefor. *South Chicago Railroad Co.* v. *Dix, supra; Carrier* v. *Massetta and Cincinnati Railroad Co.* 11 Ohio, (N. S.) 228; *Young* v. *McKenzie,* 3 Ga. 44; *Taylor* v. *Porter,* 4 Hill, 146; *Buffalo and New York Railroad Co.* v. *Brainard,* 9 N. Y. 108.

Nor is it material to the determination of this question that the proposed track is only a half or three-fourths of a mile in length, or that great loss would occur to the brick works company if it be not built. Appellee's land is sought to be taken, and it can, as to his right, make no possible difference whether the proposed line be long or short. In principle it could make no difference. If the railroad company may condemn appellee's land for the purposes indicated, why can it not build any distance it may choose for like purposes, or from Danville, its terminus, to St. Louis, if thereby its revenues would be increased, and the interests of the points to which it should build be promoted thereby? The legislature has conferred no such power upon appellant.

It therefore was made apparent, from the proofs, that the purposes and use intended were not such use as is contemplated by the grant of power under which appellant was acting, and that therefore no appropriation of appellee's land for such purpose could be made, and it was then the duty of the county court to arrest the further proceedings, and refuse the aid of the court in wresting appellee's land from him for an unlawful use.

It is said by this court in *Smith* v. *Chicago and Western Indiana Railroad Co. supra*, that "this right, (of the exercise of the right of eminent domain,) of course, is subordinate to all statutory and constitutional restrictions on the subject, and also to the further limitation that the courts of the State which are authorized to entertain applications of this character are clothed with ample power to prevent any abuses of this right by such companies." In the case of *South Chicago Railroad Co.* v. *Dix, supra*, the question was raised, by motion entered in the county court, to dismiss the petition, which motion was supported by affidavit filed in said court, showing the reasons for such motion. The company filed counter affidavits, and on consideration of the motion that court dismissed the petition. On appeal to this court the judgment of the court below was reversed, this court finding, upon consideration of the facts established by the petition and affidavits, that the use for which the condemnation was sought was necessary for the convenient and successful operation of the railroad, and therefore a lawful purpose.

The powers of the court were invoked by appellant to aid it in the appropriation of this land for a lawful purpose, and that it should, under this guise, be permitted to use the court to enable it to appropriate appellee's land to an unlawful purpose, and by its orders invest appellant thereunder for such unlawful purpose, would be a travesty upon the administration of the law. It therefore, we think, became the duty of the county court, upon it appearing that the land of ap-

pellee could not be lawfully taken for the purposes really intended, to have discharged the jury and dismissed the petition at the petitioner's costs, and for the error in not so doing the judgment will be reversed, and the cause remanded to the county court of Kankakee county, with directions to set aside the judgment entered and enter an order dismissing the petition.

*Judgment reversed.*