[Filed June 9, 1892.]

## THE UMATILLA IRRIGATION CO. v. THE UMA-TILLA IMPROVEMENT CO. ET AL.

EQUITY — INJUSTICE — FRANCHISE — HOSTILE INTERFERENCE.— Before a court of equity will interfere to restrain an infringement upon the enjoyment of a franchise, it must appear that some hostile overt act has been done by the party complained of; a mere intent not acted upon, is insufficient.

Umatilla county: JAMES A. FEE, Judge.

Defendants appeal. Reversed and dismissed.

This is a suit brought in the circuit court for Umatilla county by the above named respondent against the appellants and defendants under the provisions of the act of the legislative assembly, dated the eighteenth day of February, 1891, commonly known as the irrigation law.

The respondents, and the appellants, the Blue Mountain Irrigation & Improvement Company, the Rauch Irrigation Company, the Oliver Ditch Company, and the Valley Irrigation Company, all claim or are charged to be private corparations, organized under the laws of this state; and all of them, along with the other parties named as defendants, appeared to have made appropriations of water from the Umatilla river or its tributaries. This suit was brought to test the priority of rights so acquired. N. Williams, J. S. Hughes, J. P. Williams, and A. M. Gunn filed an answer disclaiming any interest in the matter. The Blue Mountain Irrigation & Improvement Company, the Rauch Irrigation Company, J. H. Rauch, F. H. Kearney, J. A. Marston, Lot Livermore, and J. H. Parks filed general demurrers to the complaint, which were all overruled, and thereupon none of them appeared further in the case. M. V. Rauch was charged with having some joint interest with J. H. Rauch and F. H. Kearney; he was not served with process and did not appear. The Oliver Ditch Company and the Valley Irrigation Company were duly served with process, but made no appearance. The Umatilla Improvement Com-

pany filed a motion to make the complaint more definite and certain, and the Umatilla Meadows & Butter Creek Canal Company and the Columbia Valley Land & Irrigation Company filed general demurrers to the complaint; this motion and both demurrers were overruled and thereupon the defendants answered. Issue was joined by reply, and the testimony was taken in open court. The matter was fully contested and determined upon the proofs as between the respondent and the appellants, the Umatilla Improvement Company, and the Columbia Valley Land & Irrigation Company. The Umatilla Meadows & Butter Creek Canal Company offered evidence in support of its answer; but objection was made by the respondent that the facts stated in the answer failed to set forth any defense or to show that said appellant had any interest in the controversy, which objection was sustained by the court. A final decree *pro forma* was entered in favor of the respondent, from which these parties have taken appeals. The further facts sufficiently appear in the pleadings.

The complaint is as follows, to wit:—

"Plaintiff complains, and for cause of action alleges, that it is a private corporation, organized and existing under and by virtue of the laws of the state of Oregon, with its principal office at the town of Pendleton in said state.

"That the defendants, the Umatilla Improvement Company, the Columbia Valley Land & Irrigation Company, the Blue Mountain Irrigation & Improvement Company, the Rauch Irrigation Company, the Oliver Ditch Company, and the Valley Irrigation Company, each claims to be a like corporation, having its principal office at said town, and the Umatilla Meadows & Butter Creek Canal Company claims to be a like corporation, having its principal office at the town of Echo, in said state.

"That the enterprise and business for which the plaintiff was incorporated, and in which it is now engaged is, among

other things, the construction and maintenance of a ditch and flume for supplying water to the general public for compensation, by way of rental or sale, for purposes of irrigation and supplying water for household and domestic consumption, and watering live stock upon dry lands of the state of Oregon, situated in Umatilla and Morrow counties.

"That the plaintiff is, and was on the twenty-first day of February, 1891, duly authorized and empowered by the laws of the state of Oregon and its articles of incorporation, to appropriate and divert water from the natural channel of the Umatilla river and Wild Horse creek, a tributary of said river, and other tributaries thereof, for the purposes aforesaid, and to construct and maintain a ditch and flume for the purposes of carrying the water so appropriated to the places where it is to be used, and to construct and maintain dams, reservoirs, and feeders, for the purpose of assisting in the appropriation and diversion of said water, and for storing water for future use, and distributing ditches for the purpose of distributing the water appropriated upon the ground where the same is to be used.

"That having been so organized and being so empowered, and being desirous of diverting water from said Umatilla river and Wild Horse creek, said plaintiff did on said day select a point of diversion of the water of said river, and did then post a written notice in a conspicuous place at said point, setting forth therein the name of the ditch and flume intended to be constructed and operated by the plaintiff, and the name of the owner thereof, the point at which the headgate of said ditch and flume was proposed to be located, a general description of the course of said ditch and flume, the size of said ditch and of said flume in width and depth, the number of reservoirs intended to be constructed for use in connection with said ditch and flume, and that the plaintiff thereby appropriated fifty thousand inches, by miner's measurement, of the water of said river.

"And on said day the plaintiff did in like manner select a point of diversion of the water of said Wild Horse creek, and did then post a written notice in a conspicuous place at said point in all respects similar to the notice above mentioned, save that in lieu of fifty thousand inches it was therein set forth that the plaintiff thereby appropriated five thousand inches, by miner's measurement, of the water of said creek.

"That the course of said ditch and flume, as set forth in said notice, together with its distributing ditches, reservoirs and feeders, lies wholly within Umatilla county, and within ten days from the posting of said notices, to wit, on the third day of March, the plaintiff filed for record in the office of the county clerk of said county a copy of each of said notices as the same were posted, and at the same time filed for record in said office a map showing the general route of said ditch and flume.

"That thereafter, to wit, on the seventh day of March, for the purpose of more definitely specifying the plaintiff's point of diversion of said river, and in aid of its said appropriation therefrom, but without changing in any respect said point of diversion, the plaintiff posted a further notice of appropriation at the point where the first notice was posted, in all respects similar thereto, save that the point of diversion was more particularly described therein; and thereafter, to wit, on the tenth day of March, for the purpose of more definitely specifying the plaintiff's point of diversion on said creek, and in aid of its said appropriation therefrom, but without changing in any respect said point of diversion, the plaintiff posted a further notice of appropriation at the point where the first notice was posted, in all respects similar thereto, save that the point of diversion was more particularly described therein; and within ten days thereafter, to wit, on the sixteenth day of March, the plaintiff filed both of said notices for record in the office of the county clerk of said county.

XXII OR.— 24.

"And thereafter, to wit, on the twenty-second day of October, for the purpose of more definitely specifying the plaintiff's said point of diversion on said river, and more particularly fixing the amount of water by it appropriated, and in aid and confirmation of its said appropriation, but without changing in any respect said point of diversion, the plaintiff posted a further notice of appropriation at the point where the above mentioned notices had been posted on said river, in all respects substantially similar thereto, save that the point of diversion was more particularly described therein, and it was stated that the appropriation made by the plaintiff was fifty thousand inches of water, by miners' measurement, under a six-inch pressure; and on the twenty-fourth day of October the plaintiff filed a copy of said notice, together with a map showing the general course of said ditch and flume, in the office of the county clerk of said county for record; and on the twenty-sixth day of October, with a purpose and intent similar to that last above set forth, and in aid and confirmation of its appropriation from Wild Horse creek, the plaintiff posted a further notice of appropriation at a point about four hundred yards below the point where the first two had been posted on said creek, in all respects substantially similar thereto, save that the point of diversion was more definitely described therein, and it was stated that the appropriation made by the plaintiff was five thousand inches of water, by miners' measurement, under a six-inch pressure; and on the twenty-ninth day of October the plaintiff filed a copy of said notice, together with a map showing the general course of its ditch and flume, in the office of the county clerk of said county for record.

"That within six months from the date of posting said first mentioned notices, the plaintiff commenced the actual construction of its proposed ditch and flume, and since the date of commencement has prosecuted such construction without intermission; that the actual capacity of said ditch

and flume, as the same is being constructed, is in excess of fifty-five thousand inches of water, by miners' measurement, under a six-inch pressure.

"That the total amount of water naturally running in the channel of the Umatilla river during the course of each year varies from fifty-five thousand inches to one thousand four hundred inches, miners' measurement, under a six-inch pressure, or thereabouts; and the total amount so running in the channel of Wild Horse creek varies from five thousand inches, by like measurement, to nothing.

"That the course of the ditch and the flume intended to be constructed and operated by the plaintiff has been located and staked out and lies wholly across dry lands in Umatilla county, state of Oregon; that there is no living water upon said lands, save at the points where they are crossed by said Umatilla river and Wild Horse creek, and the natural rainfall is inadequate to supply the needs of persons living upon and owning the same for purposes of irrigation, household and domestic consumption, or watering live stock; nor is there any means whereby the necessities of such persons in such behalf can be satisfied save by the agency of a ditch carrying water upon said lands, and there is no source of supply for said ditch save the streams aforesaid; that along the line of the plaintiff's ditch and flume, as the same has been surveyed and located, there is a great tract of agricultural land, to wit, more than one hundred thousand acres, capable of being supplied by water from said ditch and flume, which, with the application of water, will become very productive and valuable, and will sustain a large population and a great number of live animals; but without water, as the same now are, said lands are unproductive and of but little value, and will not support man or beast; that said lands are in part owned by private persons, and in part by the government of the United States; that more than half said amount is held by private persons and has been occupied and cultivated by

the owners thereof, but for want of water the cultivation and occupancy thereof have proved a failure, and said lands are being largely abandoned by the owners thereof, while for the same reason such portion of said lands as now belongs to the government of the United States will not be taken or occupied by private persons; that the water appropriated by the plaintiff, as aforesaid, will, when conveyed to said lands through said ditch and flume, supply the needs of the owners of a very large part of the lands now held by private ownership, as well as of such persons as may hereafter become owners of the lands now owned by the government, for water to be used in irrigating crops to be grown on said lands, and for household and domestic consumption and watering live stock, and will lead to the settlement, occupancy and cultivation of a large part of the lands now owned by the government; and that it is the intention of the plaintiff to supply from its said ditch and flume water to all persons, without discrimination other than priority of contract, for the purposes above set forth, so long as it may have water to supply, and upon such terms and for such rates of compensation as may be agreed upon between said persons and the plaintiff; and plaintiff says the use it proposes to make of said water as above set forth is a public use.

"That by reason of the premises, the plaintiff secured on the said twenty-first day of February, a valid right of appropriation of fifty thousand inches of water, by miners' measurement, under a six-inch pressure, from said Umatilla river, and of five thousand inches, by like measurement, from said Wild Horse creek, which appropriations it has ever since held, and now holds in their entirety, and both of which appropriations are prior in time and right to any other appropriation for like purposes, made from said streams, or either of them, or from any tributary of the Umatilla river; nevertheless, the defendants, the Umatilla Improvement Company, the Umatilla Meadows & Butter

Creek Canal Company, the Columbia Valley Land & Irrigation Company, the Rauch Irrigation Company, the Oliver Ditch Company, the Valley Irrigation Company, and the defendants N. Williams, J. S. Hughes, J. P. Williams, and A. M. Gunn, acting jointly, and the defendants J. H. Rauch, M. V. Rauch, and F. H. Kearney, acting jointly, and the defendant J. A. Marston, by virtue of pretended appropriations of the water of said Umatilla river at points below the plaintiff's points of diversion, each claims and asserts some right to the water of said river in opposition to the rights and the appropriations of this plaintiff.

That the defendant, the Columbia Valley Land and Irrigation Company, also claims and asserts a right adverse to the rights of this plaintiff in the premises as above set forth to the water of Butter creek, a tributary of the Umatilla river, by virtue of an alleged appropriation made of such water; and the defendant, the Blue Mountain Irrigation & Improvement Company, and the defendants Lot Livermore and J. H. Parks, acting jointly, each claims and asserts a right adverse to the said rights of this plaintiff to the water of McKay creek, a tributary of said river, by virtue of an alleged appropriation made of such water.

"That both of said creeks flow into the Umatilla river below the points of diversion of the water appropriated by the plaintiff and below the mouth of Wild Horse creek, and there are on the Umatilla river, below the mouths of both of said creeks, divers persons owning lands lying contiguous to said river, which persons, in regard to said lands, are entitled to the flow of the water of said river in its natural channel in sufficient quantity to supply all their requirements for household and domestic consumption, watering live stock and the irrigation of crops; that if the appropriation of the plaintiff and all the pretended appropriations of the defendants, including the appropriations last mentioned, are allowed to hold good, all the water running in the natural channel of said river will be exhausted before

it reaches said lands, and it will be necessary for a complete determination of the rights of this plaintiff in the premises to have an adjudication of the validity and priority of its said appropriations with reference to the said alleged appropriations from Butter creek and McKay creek, as well as the other alleged appropriations of the defendant hereinbefore mentioned.

"That it will require a large amount of money, to wit, six hundred thousand dollars, to construct and equip the proposed ditch and flume of the plaintiff, with their appurtenances, and to put the same into operation, and the plaintiff is desirous of raising said sum of money by floating its bonds; that in order to enable it so to do, it is essential that said bonds should be secured by mortgage or lien upon the ditch and flume of the plaintiff and their appurtenances, and upon the right to the water appropriated by the plaintiff, and its franchises in connection therewith; that the plaintiff is now engaged in an effort to float said bonds, but persons who otherwise would take them will not do so on account of the pretended claims of the defendants, as above set forth, nor until the plaintiff establishes its superiority to the water of said Umatilla river and Wild Horse creek to the extent of its appropriations above mentioned; that consequently the pretended claims of the defendants above set forth and the assertion thereof in hostility to the plaintiff's said appropriations, constitute clouds upon the title of the plaintiff to the water by it appropriated from said Umatilla river and said Wild Horse creek, and are subjecting the plaintiff to great and irremediable injury.

"That all the points of the defendants' alleged appropriations lie within Umatilla county, and all ditches, flumes and other appliances and appurtenances, which have been or are being constructed or projected for the purpose of making use of the water pretended to have been appropriated, lie in whole or in part within said county.

"That the plaintiff is without remedy at law, or otherwise than in a court of equity, where all such matters are properly cognizable and relievable.

"Wherefore plaintiff prays a decree of this honorable court adjudging that the appropriations made by the plaintiff from the Umatilla river above set forth, to the extent of fifty thousand inches of water, by miners' measurement, under a six-inch pressure, and its appropriation from Wild Horse creek, above set forth, to the extent of five thousand inches, by like measurement, are both superior in time and right to any and all appropriations made by the defendants or any of them from the waters of the Umatilla river, Butter creek, or McKay creek; and that the plaintiff may recover from the defendants a judgment for its costs and disbursements herein sustained, and may have such further or other relief as to the court may appear to be just and equitable."

The Umatilla Improvement Company filed an answer denying the material allegations of the complaint, and then pleaded new matter as follows:—

"That it is a private corporation, organized and existing under and by virtue of the laws of the state of Oregon, with its principal office at the town of Pendleton, Umatilla county, Oregon.

"That the enterprise and business for which the defendant was incorporated is, among other things, the construction and maintaining of a ditch and flume for diverting a portion of the waters flowing in the Umatilla river and its tributaries for the purpose of supplying water to the general public, for compensation by way of rental or sale, for irrigation, household and domestic purposes, and watering live stock upon dry lands of the state of Oregon situated in Umatilla and Morrow counties.

"That for the purpose of carrying out its said purposes, the defendant did, on the thirty-first day of October, 1891, select a point for the diversion of said water, said point

being described as a point on the south bank of the Umatilla river on a magnetic bearing 63° 40' west of the northeast corner of the northwest quarter of the northwest quarter of section sixteen, township three north, range twenty-nine east, Willamette meridian, and distant therefrom eleven hundred and fifty-seven feet.

"That on said thirty-first day of October, 1891, the defendant caused a notice to be posted at said point of diversion in a conspicuous place and manner, said notice being in writing and setting forth therein the name of the ditch and flume to be constructed and operated by the defendant, and the name of the owner thereof, the point at which the headgate of said ditch and flume was proposed to be located, a general description of the course of said ditch and flume, the size of said ditch and of said flume in width and depth, the number of reservoirs intended to be constructed for use in connection with said ditch and watering live stock upon dry lands of the state of Oregon situated in Umatilla and Morrow counties.

"That for the purpose of carrying out its said purposes, the defendant did, on the thirty-first day of October, 1891, select a point for the diversion of said water, said point being described as a point on the south bank of the Umatilla river, on a magnetic bearing 63° 40' minutes west of the northeast corner of the northwest quarter of the northwest quarter of section sixteen, township three north, range twenty-nine east, Willamette meridian, and distant therefrom eleven hundred and fifty-seven feet.

"That on said thirty-first day of October, 1891, the defendant caused a notice to be posted at said point of diversion in a conspicuous place and manner, said notice being in writing and setting forth therein the name of the ditch and flume to be constructed and operated by the defendant and the name of the owner thereof, the point at which the headgate of said ditch and flume was proposed to be located, a general description of the course of said

ditch and flume, the size of said ditch and of said flume in width and depth, the number of reservoirs intended to be constructed for use in connection with said ditch and flume, and that plaintiff thereby appropriated fifty thousand inches, by miners' measurement, under a six inch pressure, of the waters of said river.

"That on the ninth day of November, 1891, the defendant caused a notice in all respects similar to said notice so posted to be filed in the clerk's office of the clerk of Umatilla county, for record, and therewith also filed in said office a map showing the general course of said proposed ditch.

"That under and by virtue of said notice of appropriation, the defendant claims the right to divert at said point fifty thousand inches of water, by miners' measurement, under a six-inch pressure, of the waters flowing in the Umatilla river, which right the defendant claims to be prior in time and superior to any rights claimed by the plaintiff under and by virtue of its pretended notices and appropriations, and prior in time and superior to any of the rights claimed by any of the co-defendants.

"Wherefore this defendant prays for a decree of this honorable court declaring its rights under said notices to be prior in time and superior to the rights of plaintiff and of the co-defendants; that this defendant have judgment against the plaintiff for its costs."

The defendant, the Umatilla Meadows & Butter Creek Canal Company, filed an answer, denying many of the material allegations of the complaint, and then alleged by way of defense the following new matter:—

"That the following named persons, Elvira Teel, O. Teel, J. H. Koontz, M. Allen, M. C. Treble, Henry Baumgardner, T. Nye, Arthur Dillon, John Boyce, and W. W. Caviness, are now, and have been heretofore for a long time past, the owners of lands bordering upon the Umatilla

river in Umatilla county, Oregon, aggregating in all about five thousand acres of land.

"That the said several persons hereinbefore mentioned and their predecessors settled upon the said lands when the same were public lands of the United States, and have up to the dates and times hereinafter mentioned used the said waters of the Umatilla river in irrigating the said lands and watering stock, and for household and domestic purposes upon the said lands.

"That in September, 1890, the said persons being desirous of constructing one ditch that would supply the said several parties living upon these several tracts of land bordering the Umatilla river near the town of Echo, in Umatilla county, Oregon, did cause to be organized as a corporation this defendant, the Umatilla Meadows & Butter Creek Canal Company.

"That ever since said twelfth day of September, 1890, the said Umatilla Meadows & Butter Creek Canal Company has been and still is a corporation organized and existing under the laws of the state of Oregon, and that all of the stock of said corporation is owned by said persons hereinbefore mentioned.

"That the object and purpose of constructing the ditch hereinafter mentioned was for the purposes of conveying water for irrigation and domestic and household purposes, and for watering stock upon the land of the several persons hereinbefore mentioned bordering upon the said Umatilla river.

"That thereafter, and after the organization of said corporation, this defendant did proceed to cut a ditch, now known as the ditch of the Umatilla Meadows & Butter Creek Canal Company, from the west bank of the Umatilla river, with a capacity of ten thousand inches of water, and did actually divert from the said river, through and by means of said ditch, ten thousand cubic inches of said water, or a proportion thereof, miner's measurement, under

a six-inch pressure, and convey the same upon the said lands of the said Elvira Teel, O. Teel, J. H. Koontz, M. Allen, M. C. Treble, Henry Baumgardner, T. Nye, Arthur Dillon, John Boyce, and W. W. Caviness, and that said persons received water through said ditch of this defendant, and have used the same for irrigation of their said lands; that the use of said water is necessary in the cultivation of said land; that the same has heretofore during the season of 1890 been used upon said lands of said several persons hereinbefore mentioned for domestic purposes and for watering stock, and for the purpose of irrigating crops thereon.

"That the use of the said waters of the said Umatilla river, and now used through and by means of the said ditch of the Umatilla Meadows & Butter Creek Canal Company, is of great value to the persons hereinbefore mentioned, and that the use of the same is necessary for the cultivation of their said lands, and for irrigation of crops growing thereon, and for household and domestic purposes, and that the said lands of the persons hereinbefore mentioned would be of little value and of no greater value than five dollars per acre without the use of the water, and with the use of the said water the same is worth about forty dollars per acre.

"That all of said parties have crops growing upon their said lands, for the proper cultivation of which said water is necessary.

"That all of the stock of said company is owned by said persons hereinbefore mentioned and said ditch was dug as a private enterprise, and for the individual use of the said persons hereinbefore mentioned; that said appropriation of said water is prior in time and superior in right to any appropriation by plaintiff herein or by any of the defendants in this cause, and that said water, or a proportion thereof, is actually diverted and used by this defendant and the said several persons hereinbefore mentioned in the

manner hereinbefore alleged, and still is being continued to be used to the extent of ten thousand inches, or a proportion thereof, and that the said use of the water and the said appropriation thereof and the diversion through and by means of said ditch of the Umatilla Meadows & Butter Creek Canal Company in no way affects any rights of this plaintiff, or of any other persons or person upon the said Umatilla river, or of any riparian owner upon said river, or of any other ditch or flume or canal company.

"Wherefore this defendant prays that it may be decreed to be an appropriator prior in time and in right to this plaintiff, or any other of the parties in this suit, of ten thousand inches of the said waters of the Umatilla river by means of said ditch, and to be entitled to take the same by means of said ditch from the said Umatilla river, and use the same for the purposes of irrigating the lands hereinbefore mentioned in the manner in which the same has heretofore been used.

"That defendant may have and recover of and from the plaintiff its costs and disbursements of this suit, and that it may have such other and further relief in the premises as may be agreeable to equity and good conscience and to this honorable court may seem meet."

The Columbia Valley Land Company also filed its answer which, after denying many of the material allegations of the complaint, averred the following new matter:

"And further answering and for a further and separate defense in this suit, this defendant, the Columbia Valley Land & Irrigation Company, avers the fact to be that at all the dates and times herein mentioned this defendant was and still is a corporation, existing under and by virtue of the laws of the state of Oregon, and having its principal office and place of business in the town of Pendleton, Umatilla county, Oregon.

"That the business for which this defendant was incorporated, and in which it is now engaged, is, among other

June, 1892.] Umatilla Irri. Co. v. Umatilla Imp. Co. 381

Statement of the case.

things, the construction and maintenance of a ditch and flume for supplying water to the general public for compensation by way of rental or sale for the purpose of irrigation, and for supplying water for household and domestic consumption, and watering live stock upon dry lands of the state of Oregon, situate in Umatilla county.

"That this defendant is and was on the twenty-fourth day of October, 1891, duly authorized and empowered by the laws of the state of Oregon and its articles of incorporation, to appropriate and divert water from the natural channel of the Umatilla river for the purposes aforesaid, and to construct and maintain a ditch and flume for the purpose of carrying water so appropriated to the places where it is to be used, and to construct and maintain dams, reservoirs and feeders for the purposes of appropriation and diversion, and for storing water for future use, and distributing ditches for the purpose of distributing the water appropriated upon the ground where the same is to be used.

"That having been so organized, and being so empowered, and being desirous of diverting water from said Umatilla river, this defendant did, on the 24th day of October, 1891, select a point of diversion of the water of the said Umatilla river, which said point of diversion was and is on the west bank of said Umatilla river at the mouth of Alkali canyon, which point is about three-fourths of a mile in a southerly direction from the railroad station at Echo, Umatilla county, Oregon, and being a point on the west bank of said stream at the point where the water is diverted by the Umatilla Meadows & Butter Creek Canal Company, to the head-gate of said company, as the same is now located, said head-gate being about a hundred feet in a westerly direction from said point of diversion, and said point of diversion being in the northeast quarter of section twenty-one, township three north, range twenty-nine east, of the Willamette meridian, and did on said day post a written notice in a conspicuous place and in plain view at the said

point of diversion, setting forth therein the name of the ditch intended to be constructed and operated by this defendant, and the name of the owner thereof, and the point at which the head-gate of said ditch and flume was proposed to be located, and a general description of the course of said ditch and flume, and the size of said ditch and flume in width and depth, and the number of reservoirs intended to be constructed for use in connection with the ditch and flume, and the number of cubic inches, miners' measurement, under a six-inch pressure, of water of said river appropriated and intended to be diverted by this defendant, namely, eighty thousand cubic inches of water, miners' measurement, under a six-inch pressure.

"That the course of said ditch and flume, as set forth in said notice generally, with said distributing ditches, reservoirs and feeders, lies wholly within Umatilla county; and within ten days from the posting of said notice, namely, on the second day of November, A. D. 1891, this defendant filed for record in the office of the county clerk of said Umatilla county a copy of said notice, as the same was posted, and at the same time filed for record in said office of the county clerk of Umatilla county, Oregon, a map showing the general route of said ditch and flume.

"That within six months from the date of posting said notice, this defendant commenced the actual construction of its proposed ditch and flume, and since the date of commencement thereof has prosecuted such construction without intermission.

"That the actual capacity of said ditch and flume as the same is now being constructed, is in excess of eighty thousand inches of water, by miners' measurement, under a six-inch pressure, and that this defendant in the construction of said ditch and flume has expended large sums of money, to wit, about the sum of thirty thousand dollars, and has actually built and constructed six miles of said ditch of the capacity aforesaid.

"That the total amount of water naturally running in the channel of the Umatilla river at the point of diversion by this defendant's ditch and flume during the course of each year varies from eighty thousand to ten thousand inches, miners' measurement, under a six-inch pressure, or thereabout.

"That the course of the ditch and flume intended to be constructed and operated by the defendant has been located and staked out and permanently located, staked out and cross-sectioned, for a distance of sixteen miles or thereabout, and lies wholly across dry, arid lands, situate in Umatilla county, Oregon, and there is no living water upon said lands, save at the points where they are crossed by the said Umatilla river and Butter creek, and the natural rainfall is adequate to supply the needs of persons living upon and owning the same for the purposes of irrigation, household, and domestic consumption, and for watering live stock, and there is no means whereby the necessities of such persons living in such behalf can be can be satisfied, save by the agency of a ditch carrying water upon the said lands, and there is no source of supply for the said ditch save the streams aforesaid.

"That along the line of defendant's ditch and flume as the same has been surveyed and located, there is a great tract of agricultural land, numbering about two hundred thousand acres, capable of being supplied by water from said ditch and flume, which with the application of water will become very productive and valuable, and will sustain a large population and live animals, but without water as the same now are, said lands are unproductive and of little value.

"That in their present condition said lands are not worth more than twenty-five cents per acre, and with water thereon from the ditch and flume of this defendant, will be of the value of forty dollars per acre.

"That said lands are in part owned by the government of the United States.

"That more than half of said amount is held by the government of the United States, and has not been occupied or cultivated by reason of the arid character of the lands and the want of water, and if water is brought thereon in the manner in which this defendant now seeks to conduct the same through its said ditch and flume, said lands will be rapidly settled up and occupied and brought under cultivation, and that it is the intention of the defendant to supply from its ditch and flume water without discrimination other than priority of contract, for the purposes of irrigation, watering live stock, household and domestic consumption, to persons owning or occupying said lands so long as it may have water to supply, and upon such terms and for such rate of compensation as may be agreed upon between said persons and this defendant, and that said use of said water for said purposes is a public use.

"That by reason of the premises, this defendant on the twenty-fourth day of October, 1891, secured a valid right of appropriation of eighty thousand inches of the water of said Umatilla river, by miners' measurement, under a six-inch pressure, which said appropriation it has ever since held and now holds in its entirety, and which said appropriation is superior in right and prior in time to any valid appropriation or any appropriation by the plaintiff herein, or any of the defendants herein, for like purposes made from said Umatilla river.

"That if the pretended appropriation of plaintiff or any of the pretended appropriations of the defendents herein are allowed to hold good, all the water running in the natural channel of said Umatilla river will be exhausted before it reaches the point of diversion of defendant's said ditch and flume on said Umatilla river."

Another separate defense substantially alleged that the plaintiff's alleged appropriation was not made in good faith

for the purpose of constructing the ditch or flume mentioned, or any ditch or flume, but for the purpose of speculation, by selling and floating bonds upon the market; that since said alleged appropriation, the plaintiff has failed to commence and carry on its work in good faith, and has not constructed any part of said ditch or flume; and said appropriations and locations made by the plaintiff were made for the purpose of fraudulently obstructing and interfering with the rights of this defendant and other defendants in this suit and riparian owners along the bank of the Umatilla river, and not for the appropriation of the waters of Umatilla river to public useful purposes; that plaintiff has not performed any work upon the line of said ditch pretended to have been located by it, to exceed in value the sum of one hundred dollars; and prior to the expiration of the six months limited by law for performing work on said ditch, had not performed work thereon to the amount of five dollars.

"Wherefore, this defendant prays that it may be decreed to be a prior appropriator of the waters of the Umatilla river at the point of diversion set forth in this answer to the extent of eighty thousand inches thereof, prior and superior in time and right to any claim or appropriation by the plaintiff or any of the defendants herein, and that the appropriation of the defendant from the Umatilla river above set forth to the extent of said eighty thousand inches, by miner's measurement, under a six-inch pressure, be decreed superior in time and right to any and all appropriations made by the plaintiff or defendants herein, or any of them, either to the waters of the Umatilla river, Butter creek, McKay creek, or Wild Horse creek, and that defendant may have and recover of and from the plaintiff its costs and disbursements in this suit, and that defendant may have such other relief," etc.

The new matter in each of these answers was denied by the replies filed and evidence duly taken.

XXII OR.—25.

*Cox, Teal & Minor,* for Respondent.

*J. C. Leasure, R. J. Slater,* and *Bailey & Balleray,* for Appellants.

STRAHAN, C. J.—This is not a suit to determine an adverse claim to real property, within the meaning of section 504, Hill's Code. That section provides: "Any person in possession by himself or his tenant of real property, may maintain a suit in equity against another who claims an estate or interest therein adverse to him, for the purpose of determining such claim, estate, or interest." The slightest reference to this section is sufficient to show that the jurisdiction which the plaintiff invokes is not conferred by it. If a court of equity has the jurisdiction which was assumed in this case, it is not conferred by statute, but exists, if at all, as a part of the general equity jurisdiction.

It will be observed that the plaintiff nowhere claims that either of the defendants has at any time or in any manner interfered with its alleged rights to the water which it claims. The plaintiff shows that it incorporated, and filed sundry notices of its claim and maps, and did a very little work. The defendants did the same, though one of the defendants has perhaps done more work and expended a larger amount of money than has the plaintiff. In several parts of its complaint, the plaintiff alleges facts upon which it relies as reasons for equity assuming jurisdiction. This, for instance: "That if the appropriation of the plaintiff and all the pretended appropriations of the defendants, including the appropriations last mentioned, are allowed to hold good, all the water running in the natural channel of said river will be exhausted before it reaches said lands, and it will be necessary for a complete determination of the rights of this plaintiff in the premises to have an adjudication of the validity and priority of its appropriations with reference to the said alleged appro-

priations from Butter Creek and McKay Creek, as well as the alleged appropriations of the defendants hereinbefore mentioned." It is then alleged that it will require six hundred thousand dollars to construct and equip said ditch and put the same in operation, and that the plaintiff is desirous of raising the same by floating bonds; that in order to enable it to do so, it is essential that the said bonds should be secured by mortgage or lien upon the ditch and flume of the plaintiff and their appurtenances, and upon the right of the water appropriated by the plaintiff and its franchises connected therewith; that the plaintiff is now engaged in an effort to float said bonds; but persons who otherwise would take them will not do so on account of the pretended claims of the defendants above set forth, nor until the plaintiff establishes its superior right to the waters of said Umatilla river and Wild Horse creek to the extent of its appropriations above mentioned; that consequently the pretended claims of the defendant, above set forth, and the assertion thereof in hostility to the plaintiff's said appropriations, constitute clouds upon the title of the plaintiff to the water by it appropriated from said Umatilla river and Wild Horse creek, and are subjecting the plaintiff to great and irremediable injury.

The plain inference from all of this is that the plaintiff claims to have acquired a first right to this water, and wishes to put it in a ditch and flume, to be used for the purposes of irrigation by whoever will buy it; that it has not money enough to do the work without selling bonds, but that as long as the defendants are claiming to take a large amount of water from the same supply below the plaintiff's point of diversion, no one will buy said bonds. In effect, this court is asked to certify that the plaintiff owns the water which it claims, for the purpose of enabling it to make sale of its bonds; at least, this seems to be the clear logic of the position. All of the rights claimed by the plaintiff or either of the defendants are, as yet, only evi-

denced by notices and maps; not a drop of water has been diverted. If the plaintiff has acquired a legal right to take the water from the streams mentioned, there is nothing to prevent its doing so, at least so far as this record discloses. If, in the development of its project, any person should wrongfully interfere with water to which it might then be able to show itself entitled, no doubt a court of equity would, upon a proper showing, restrain such interference; but as yet nothing comparatively has been done by the plaintiff, and the defendants have in no manner disturbed it in the exercise of any of its rights or franchises. The plaintiff may never construct a ditch or flume; and if it did, and is entitled to the water, it is not to be presumed or intended that the defendants would violate the plaintiff's rights; at least, if it is of the opinion that the defendants intend to do so, it must wait for some overt act that injures it. An intent not acted upon is not actionable. Much of the plaintiff's contention was devoted to the various notices filed by it and placed of record with the county clerk.

In the view taken of this case, it is unnecessary to consider the effect of these several notices; but it may not be improper to remark that the statute under which the proceedings of the plaintiff, as well as the defendants, were taken, is one requiring a strict construction; and whatever rights either party acquires under it must be done by a strict compliance with its terms. No favorable intendment or liberal construction can be tolerated in the enforcement of such a statute. (*Watson* v. *Acquackanonck Water Co.* 36 N. J. L. 295; *Central R. R. Co.* v. *Hudson Terminal Co.* 46 N. J. L. 289; *Cox* v. *Tipton,* 18 Mo. App. 450; *Sugar Refining Co.* v. *St. Louis Grain Elevator Co.* 82 Mo. 121; *Chicago etc. R. R. Co.* v. *Wiltse,* 116 Ill. 449; *The Miami Coal Co.* v. *Wigton,* 19 Ohio St. 560; *Alabama etc. R. R. Co.* v. *Gilbert,* 71 Ga. 591; *Sharp* v. *Speir,* 4 Hill, 76; *Ball* v. *Lastinger,* 71 Ga. 678; *Bensley* v. *Mountain Lake Water Co.* 13 Cal. 306; 73 Am. Dec. 575; *Bloom* v. *Burdick,* 1 Hill, 130; 37 Am. Dec. 299; *In re Water Comrs.* 96 N. Y. 351; *Keller* v. *Corpus Christi,* 50 Tex. 614; 32

Am. Rep. 613; *Dent* v. *Ross,* 52 Miss. 188; *Lombard* v. *Whiting,* Walker (Miss.), 229; *Willard* v. *Fralick,* 31 Mich. 431.)

Further discussion seems to be unnecessary. The plaintiff has failed to bring itself within any principle of equity jurisdiction which would enable a court of equity to consider or pass upon the supposed rights alleged in its complaint, and the counter-claims pleaded by several of the defendants must fail for the same reasons. Within what we conceive to be the well-established doctrines of equity, neither party has as yet done anything to invite or justify equitable interposition.

Entertaining these views, we must reverse the decree and dismiss the suit.