(No. 14619.—Judgment reversed.)

THE LITCHFIELD AND MADISON RAILWAY COMPANY, Appellee, *vs.* THE ALTON AND SOUTHERN RAILROAD, Appellant.

*Opinion filed October 21, 1922—Rehearing denied Dec. 15, 1922.*

1. EMINENT DOMAIN—*whether use justifies taking of property is a question for the courts.* Within constitutional restrictions the legislature may decide in what cases the right of eminent domain may be exercised, or it may, with limitations, delegate to an administrative body the power to make such decision, but the questions whether the particular use to which it is sought to appropriate the private property is a public use and whether such use will justify the compulsory taking of private property under the statute and the constitution are to be determined by the courts.

2. SAME—*the decision of the Public Utilities Commission is not res judicata as to whether taking is for public use.* The decision of the Public Utilities Commission that a railroad company may lay its switch or spur-track across the track of another company at a particular point is not *res judicata* of the question whether the exercise of the right of eminent domain is for a public use.

3. SAME—*the power of eminent domain is inherent in the State.* The power of eminent domain is recognized as inherent in the State, and the purpose of section 13 of article 2 of the constitution is not to grant the power but to limit and regulate its exercise and to protect private property against the unjust use of the power.

4. SAME—*meaning of the term "eminent domain."* "Eminent domain" is a term used to designate the power of a sovereign to take or to authorize the taking of private property within its jurisdiction for public use without the owner's consent.

5. SAME—*property must be taken for a public use.* It is essential to the exercise of the power of eminent domain that the property be taken for a public and not a private use, and any legislation that attempts to grant the right to take private property for private use is void.

6. SAME—*when laying of switch or spur-track is for a public use.* Switch or spur-tracks of a railroad company, if open to the public use indiscriminately and under the public control as railroad track, are tracks for public use although used almost entirely by a particular manufacturing establishment, provided there is no exclusion of an equal right of use by others.

7. SAME—*public use must be by right and not by permission.* To justify the taking of private property for public use the public

must be entitled to use or enjoy the property, not as a mere favor or by permission of the owner but by right.

8. SAME—*when spur-track is not for public use.* A spur-track leading from the main line of a railroad to a private manufacturing plant so situated that the public does not have access to the track is not for a public use which would justify the exercise of the right of eminent domain in laying the spur-track across the track of another company; and the fact that the manufacturer may be enabled to serve the public more economically does not change the character of the use from private to public.

APPEAL from the County Court of Madison county; the Hon. J. E. HILLSKOTTER, Judge, presiding.

KRAMER, KRAMER & CAMPBELL, for appellant.

JOHN L. FLANNIGEN, JOHN E. HAMLIN, and JOHN G. DRENNAN, for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Appellant is a belt line railroad serving the industries and the public of East St. Louis, Granite City and neighboring cities. Appellee is a railroad forty-three miles in length carrying freight and passengers between its termini, Litchfield and Madison, and intervening points, Granite City being one of the cities through which it operates. The St. Louis Coke and Chemical Company has located an extensive manufacturing plant at Granite City, and when the plant is operated at full capacity its in-bound and out-bound traffic amounts to about 200 car-loads a day. The tracks of appellant and appellee run parallel for a distance of half a mile along the property of this manufacturing plant, appellee's road being separated from the plant by appellant's right of way, which is a strip of land eighty feet wide. In order to improve its service at this plant appellee desires to secure a right of way across appellant's right of way in order to connect its main line with an industrial switch on the lands of the plant. In conformity with provisions of

the Public Utilities act the appellee asked 'and secured the authority to cross the right of way of appellant. Thereafter a proceeding under the Eminent Domain act was filed in the county court of Madison county and the right of way condemned and damages assessed. This appeal is prosecuted to review the judgment of the county court.

Appellant contends that the track in question is not a side-track or other facility of appellee but is a spur-track connecting appellee's main line with the industrial track of the manufacturing plant, which is for the exclusive use of said plant, and that the right of way is being condemned for this private use and not for a public use. Appellee contends, first, that the order of the Public Utilities Commission in effect decided that the building of the track was for the benefit of the public and that appellee had the right to take the property for the use proposed, and that the finding of the commission is *res judicata;* and second, that if the question of public use is still open for review on the merits, the record shows that the proposed track will be devoted to such a public use as will justify the acquisition of the necessary right of way by eminent domain.

The first question to be considered is the effect of the order of the Public Utilities Commission. Before the adoption of the present constitution the General Assembly had power to pass special laws granting the right to lay down railroad tracks at any given place and had power to provide for fixing by commissioners the amount of compensation to be paid for private property taken for public use, and had the authority by special law to declare the existence of a public necessity essential in a given case to the lawful taking of private property for that particular use. It was then the policy of the State to fix the terminal points of a railroad before permitting its construction. After the adoption of our present constitution the route and termini could no longer be fixed by special acts, and the compensation to be paid for the taking and damaging of private property

was required to be ascertained by a jury. Thereafter corporations could only be organized under general laws. In obedience to the constitution the General Assembly passed a general law for the incorporation of railroad companies and our present general act relating to the exercise of eminent domain. Under the law as it then existed, the railroad company seeking the right of way had the right to cross an existing railroad at any point on its route, and it had the right to select the place and manner of the proposed crossing. (*Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 97 Ill. 506.) In 1889 an act was passed taking away from the railroad company seeking the right of way across an existing railroad the right to determine the point and manner of crossing, and conferred upon the Railroad and Warehouse Commission the power to determine this question. (*Railroad and Warehouse Com.* v. *Peoria and Pekin Union Railway Co.* 267 Ill. 462.) The Public Utilities act confers upon the Public Utilities Commission (now Commerce Commission) the rights, powers and duties conferred by law upon the Railroad and Warehouse Commission, and, under the law as it existed at the time this hearing was had, the Public Utilities Commission had full power and authority to fix the point at which, the manner in which and the method by which one railroad shall cross another. (*Alton and Southern Railroad* v. *Vandalia Railroad Co.* 268 Ill. 68.) Section 45 of the Public Utilities act provides that railroad companies shall provide side-track facilities and spur-track connections whenever such construction is reasonably practicable and whenever the business to be had over such track may reasonably be expected to be sufficient to justify the necessary expense of construction, and gives authority to the commission to determine questions in dispute. Section 50 of the act gives the commission power to order such additions, extensions, repairs or improvements to or changes in the existing facilities of a railroad in order to secure ade-

quate service or facilities for its patrons. Section 58 provides that no railroad track shall be constructed across another without the permission of the commission, and the commission is given power under the section to refuse its permission or to grant it upon such terms and conditions as it may prescribe. It has power to determine and prescribe the manner, including the particular point, of crossing, and the terms of installation, operation, maintenance, use and protection of each such grade crossing. A hearing was had before the commission with respect to the location and manner of construction of the crossing in question, and the commission, on a consideration of the evidence and a view of the premises, found that the proposed grade crossing would not necessarily endanger or impede traffic and that the spur-track would materially facilitate the handling of cars in and out of the plant of the St. Louis Coke and Chemical Company and that the proposed extension of the facilities of appellee were reasonably required. The commission granted permission to appellee to construct at grade a single track across the single main track of appellant at a designated point, after appellee had secured its right of way by eminent domain or otherwise. The commission was not requested to decide, nor did it decide in this proceeding, that the proposed spur-track was to be laid for a public use. The only question presented to the commission, and the only question decided by it, was the point and manner of the proposed crossing. If the proposed track was to be built wholly upon the right of way of appellee or if all parties over whose land the proposed track was to be constructed consented to the construction, no further permission or authority would be necessary to give appellee the right to build the extension, but when private property must be taken without the consent of the owner a new question arises, and that question is, Is the property to be taken for a public use? The question of the necessity for the exercise of eminent domain and in what cases it will

be exercised, within constitutional restrictions, is legislative, and the legislature itself may decide these questions, or it may, with limitations, delegate to an administrative body power to decide them.  On the other hand, whether the use to which it is sought to appropriate the private property is a public use, and whether such use will justify the exercise of the compulsory taking of private property under the statute and constitution, are questions to be determined by the courts.  (*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 Ill. 449.)  Appellee's first position cannot be sustained.

The next question to be determined is whether the lands sought to be taken from appellant are to be devoted to a public use.  The right to exercise the power of taking private property for public use is one of the recognized powers of sovereignty and is one of the attributes inherent in the State.  This power of eminent domain is not granted by section 13 of article 2 of the present constitution but is merely recognized as one of the attributes of the State, and the purpose of that section is to limit and regulate the exercise of the power and to protect private property against the unjust use of the power.  "Eminent domain" is a phrase which has been used for hundreds of years to designate the power of a sovereign to take or to authorize the taking of private property within its jurisdiction for public use without the owner's consent.  It is essential to the exercise of the power that the property be taken for a public and not a private use, and any legislation that attempts to grant the right to take private property for private use is void. We shall not attempt an elementary discussion of the term "public use."  In the first place, it is not capable of precise definition; and in the second place, it has been so fully discussed in treatises on the subject, available to every lawyer, and in the decisions of this and other courts, that further discussion will serve no useful purpose.  The proposed track is at no point made accessible to the public.  Excepting that

part of the proposed track which is to be laid across the
right of way of appellant it is to be constructed wholly
upon the property of appellee and the property of the
St. Louis Coke and Chemical Company. It is to be used
exclusively to deliver to the manufacturing plant raw ma-
terials and to haul away from it manufactured products.
No member of the public can use the spur-track unless he
is selling to or buying from this private manufacturer. All
spur-tracks and switch-tracks are more or less beneficial to
private parties, but the public character of the use of the
tracks is never affected by this. If they are open to the
public use indiscriminately and under the public control to
the extent that railroad tracks generally are, they are tracks
for public use. It may be that such tracks will be used al-
most entirely by a particular manufacturing establishment,
yet if there is no exclusion of an equal right of use by
others and this singleness of use is simply the result of loca-
tion and convenience of access it cannot affect the question.
(*Chicago Dock Co. v. Garrity,* 115 Ill. 155.) But the pub-
lic must be entitled to use or enjoy the property, not as a
mere favor or by permission of the owner, but by right.
(*Gaylord v. Sanitary District,* 204 Ill. 576.) A spur-track
leading from the main line of a railroad to the establishment
of an enterprise that is wholly private, for the exclusive use
of such enterprise, is clearly not a public use. (*Chicago and
Eastern Illinois Railroad Co. v. Wiltse, supra; Sholl v. Ger-
man Coal Co.* 118 Ill. 427; *Pere Marquette Railroad Co. v.
United States Gypsum Co.* 154 Mich. 290, 117 N. W. 733.)
The fact that a spur-track for the private use of a manu-
facturer enables it to carry on its business more econom-
ically, and thereby enables it either to make greater profits
or to serve its patrons or customers at lower rates or cost,
does not change the character of the use from private to
public. (*Kinney v. Citizens' Water and Light Co.* 173 Ind.
252, 90 N. E. 129.) The right of way of the proposed
spur-track is at no place exposed to a public highway and

is not in any way accessible to the public without the consent of the St. Louis Coke and Chemical Company. No other person except this private manufacturer could have a car set on this spur-track for loading or unloading. Can a side-track which one private party can control to the exclusion of all others be intended for public use? The question answers itself. This record shows clearly that the proposed spur-track is to be built for the exclusive use of a private manufacturer, and the property sought to be taken is therefore not wanted for a public use, and the right of eminent domain cannot be invoked.

The judgment of the county court is reversed.

*Judgment reversed.*