The St. Louis Connecting Railroad Company, Appellant, *vs.* H. F. Blumberg *et al.* Appellees.

*Opinion filed April 20, 1927.*

1. Eminent domain—*power of eminent domain is legislative.* The power of eminent domain is an attribute of sovereignty and inherent in the State and can be exercised only on the occasion, in the mode and by the agency or corporation prescribed by the legislature, and courts have no power to decide in what cases the right may be exercised.

2. Same—*what questions are to be determined by the courts.* Whether the use to which it is sought to appropriate private property is a public use such as will justify the exercise of the sovereign right of eminent domain is a question for the courts, and it is for the courts to decide, as a preliminary question, when called upon, whether the conditions authorizing the exercise of such power exist.

3. Same—*in dismissing petition for condemnation court cannot set aside order of Interstate Commerce Commission.* Where the Interstate Commerce Commission has specifically found that public necessity and convenience require the building of a railroad in a certain location to carry interstate commerce, a State court can not dismiss a petition for condemnation on the ground that the use to which the land is to be subjected is a private and not a public use because the petitioner is a dummy corporation and the proposed track is for the benefit of another railroad company which had no power to extend its line under State laws.

4. Railroads—*extent of power of Interstate Commerce Commission.* The power of Congress, under the Federal constitution, to regulate commerce among the several States is complete, exhaustive and paramount and is not subject to interference by any State or municipality; and this power may be exercised through

the Interstate Commerce Commission in matters of rates, issuance of securities, the control of one railroad by another, and the construction of extensions and of new lines.

5. SAME—*State court cannot set aside order of Interstate Commerce Commission.* A State court is without jurisdiction to set aside, modify or annul a finding and order of the Interstate Commerce Commission, as such jurisdiction is vested solely in the Federal courts.

APPEAL from the County Court of Madison county; the Hon. WILBUR A. TRARES, Judge, presiding.

FORDYCE, HOLIDAY & WHITE, and HILES, NEWELL & BROWN, (GEORGE B. GILLESPIE, of counsel,) for appellant.

SPRINGER & BUCKLEY, and WARNOCK, WILLIAMSON & BURROUGHS, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

Appellant filed its petition, and later an amended petition verified by affidavit, for the condemnation of certain tracts of land belonging to appellees for railroad right of way purposes, and in the amended petition set out at length the facts upon which it based its claim to exercise the right of eminent domain. Appellees filed their motion to dismiss the amended petition, basing their motion upon facts apparent upon the face of the petition. No evidence was heard upon this motion, and upon consideration thereof it was sustained by the court and appellant's petition dismissed. From the judgment of the county court appellant has appealed to this court.

The motion to dismiss was in the nature of a demurrer to the petition, and the sufficiency of the facts alleged in the petition to authorize appellant to exercise the right of eminent domain and take the property described in the petition for right of way purposes is the only question here involved.

The facts stated in the petition, which for the purposes of this case we must accept as being true, are, that appellant, the St. Louis Connecting Railroad Company, is a railroad corporation organized and existing under and by virtue of the laws of the State of Illinois; that its articles of incorporation are filed in the office of the Secretary of State of Illinois and a certified copy thereof filed and recorded in the office of the recorder of deeds of Madison county, Illinois; that in the articles of incorporation it is stated that it is intended to construct the proposed railroad from a point on the constructed line of the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company at or near the city of Collinsville, thence northeasterly to a point on the constructed line of that railroad company about two miles west of the village of St. Jacob, all within the county of Madison; that the amount of the capital stock of such corporation is $100,000; that the number and amount of capital stock of such corporation are 1000 shares at $100 per share; that the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company, an Illinois corporation, is the owner of a railroad extending in a northeasterly direction through the city of Collinsville and continuing easterly to and through the village of St. Jacob; that said railroad from Collinsville to St. Jacob has many bad curves and grades, making it difficult to operate fast trains, such as are necessary at present for the accommodation of the traveling public; that it is a part of the system of the Pennsylvania railroad, connecting the city of St. Louis with the cities of New York, Washington and other Eastern cities; that said railroad is single track from Collinsville to St. Jacob, and is the only line of said companies connecting the city of St. Louis with the cities of the eastern part of the United States; that the Pittsburgh, Cincinnati, Chicago and St. Louis railroad is now leased to the Pennsylvania Railroad Company under a long-term lease, and that many cities in Illinois and in other States

are served by this road and by the various railroads of the Pennsylvania railroad system from St. Louis to the Eastern cities; that the Pennsylvania Railroad Company proposes to lease the railroad of the St. Louis Connecting Railroad Company and operate its trains over said railroad under the lease, the same as it is now operating under the lease of the Pittsburgh, Cincinnati, Chicago and St. Louis railroad; that the Pennsylvania Railroad Company is a common carrier for hire and is one of the post-roads of the United States under contract for carrying United States mail; that the St. Louis Connecting Railroad Company proposes to construct a railroad from Collinsville to a point about two miles west of the village of St. Jacob, the western terminus of such railroad to connect with the Pittsburgh, Cincinnati, Chicago and St. Louis railroad near the easterly side of Collinsville, the railroad to be so constructed as to be free from objectionable curves or grades and to be 5600 feet shorter than the line of the Pittsburgh, Cincinnati, Chicago and St. Louis railroad; that petitioner theretofore, on February 2, 1926, made its application to the Interstate Commerce Commission for a certificate of public convenience and necessity for the construction of said railroad and also for authority to issue $100,000 of capital stock, and that thereafter, on May 3, 1926, the Interstate Commerce Commission issued its certificate of public convenience and necessity and authorized the issue of $100,000 capital stock; that on February 2, 1926, the Pennsylvania Railroad Company filed its application with the Interstate Commerce Commission asking for authority to acquire control of the St. Louis Connecting Railroad Company by purchase of the capital stock of that company, and that thereafter, on May 3, 1926, the Interstate Commerce Commission entered an order authorizing the Pennsylvania Railroad Company to acquire control of the St. Louis Connecting Railroad Company by purchasing its stock at par value, the proceeds to be used for construction purposes.

The orders and findings of the Interstate Commerce Commission were attached to the petition as exhibits and made a part of the petition, and contained, among other things, the following:

"It is represented that the laws of Illinois would not permit either the Pennsylvania or the Pittsburgh Company to construct the new line railroad. Accordingly the Connecting Company was incorporated under the laws of that State on November 19, 1925, solely in the interests of the Pennsylvania and of the Pittsburgh Company, for the purpose of constructing the proposed line. The authorized capital stock of the Connecting Company is $100,000, divided into 1000 shares of common, each of the par value of $100. It is proposed to sell this stock at par to the Pennsylvania, the proceeds therefrom to be applied toward the cost of constructing the new line. Additional funds necessary to complete the project will be advanced by the Pennsylvania from its treasury, and no securities are to be issued by the company at this time in connection therewith. After completion of the construction the Pennsylvania plans to operate the line under lease. It is stated that a proper application for authority to execute such lease will be filed with us. Nothing herein is to be construed as authorizing the Pennsylvania to operate over the new line or as a commitment on our part with respect thereto. The line in question will be double track and laid with 130-pound rail. The maximum grade will be 0.5 per cent and the maximum rate of curvature 2. A reconnaissance has been made, plans and estimates have been prepared and the projected location of the line staked. Cost of construction is estimated at $1,954,000. It is represented that about one year will be required to complete the line after the right of way has been acquired. The construction of the proposed line is a part of the program now being carried on by the Pennsylvania in double-tracking the main line of the St. Louis division of the Pittsburgh Company, all of whose line is oper-

ated by the Pennsylvania under a long-term lease. It is represented that the proposed construction is necessary in order to double-track the main line, to improve the grade and alignment thereof and to shorten the distance between Collinsville and St. Jacob. It will also materially relieve the congestion which is said to exist on that part of the St. Louis division. The new line will be 5600 feet shorter than the old. Grades and curvature will be substantially reduced. The line is not intended to originate new business or to handle local traffic. Under the completion of the proposed construction, through freight and passenger traffic will be moved over the new line. Traffic originating on or destined to points on the old line will be handled as heretofore. Upon the facts presented we find:

"1. That the present and future public convenience and necessity require the construction and operation by the Connecting Company of the line of railroad in Madison county, Illinois, described in the application recorded in finance docket No. 5335.

"2. That the issue by the Connecting Company of $100,000 of common capital stock as aforesaid (*a*) is for a lawful object within its corporate purposes and compatible with the public interest, which is necessary and appropriate for and consistent with the proper performance by it of service to the public as a common carrier and which will not impair its ability to perform that service; and (*b*) is reasonably necessary and appropriate for such purpose.

"3. That the acquisition by the Pennsylvania of control of the Connecting Company by purchase of capital stock will be in the public interest, and that the terms under which the Pennsylvania purposes to acquire such stock and the consideration which it is to pay therefor are just and reasonable.

"It is ordered that the St. Louis Connecting Railroad Company be, and it is hereby, authorized to issue $100,000 of common capital stock, consisting of 1000 shares of the

par value of $100 each, said stock to be sold to the Pennsylvania Railroad Company at not less than par and the proceeds used for construction purposes as set forth in the report aforesaid. And it is further ordered that the acquisition by the Pennsylvania Railroad Company of control of the St. Louis Connecting Railroad Company by purchase of the capital stock of that company, as described in the report aforesaid, be and the same is hereby approved and authorized."

The petition further averred that on October 11, 1926, the St. Louis Connecting Railroad Company made application to the Illinois Commerce Commission for permission to cross certain public highways with its tracks in the construction of its line of railroad, and that on November 18, 1926, an order was issued by the commission authorizing the railroad company to construct the railroad across such highways. The petition further averred that in order to construct its line of railroad it was necessary to acquire in this proceeding a right of way over the lands of appellees described in the petition and that it had endeavored to purchase the same from the owners but had been unable to reach an agreement with them, and that petitioner's board of directors, by resolution of December 8, 1925, authorized the construction of the railroad, and by resolution of July 27, 1926, authorized petitioner, by its officers, to institute proceedings in the proper course for the purpose of appropriating the lands described in the petition for right of way purposes for the construction of the railroad.

It is contended by appellees in their motion to dismiss that the petitioner is without authority to bring this proceeding. The power of eminent domain is an attribute of sovereignty and inherent in the State, and can be exercised only on the occasion, in the mode and by the agency prescribed by the legislature, and only those corporations to whom the legislature has delegated the authority can exercise such right. Appellant is a railroad corporation or-

ganized under the laws of the State of Illinois, and as such, by section 17 of chapter 114 of Cahill's Statutes of Illinois, is specifically given the right to exercise the power of eminent domain. The question of the necessity for the exercise of the power of eminent domain and in what cases it will be exercised, within constitutional restrictions, is legislative and not judicial, and the legislature itself may decide these questions. Whether the use to which it is sought to appropriate the private property is a public use, and whether such use will justify the exercise of the compulsory taking of private property, are questions to be determined by the courts, and it is for the court to decide, as a preliminary question, when called upon, whether the conditions authorizing the exercise of such power exist and whether the use to which it is sought to appropriate the property is such a use as will justify the exercise of the sovereign right of eminent domain. *Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 Ill. 449; *Illinois State Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 208 id. 419; *Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad,* 305 id. 388; *Bierbaum* v. *Smith,* 317 id. 147; *Limits Industrial Railroad Co.* v. *American Spiral Pipe Works,* 321 id. 101.

It is contended by appellees that the use for which the property described in the petition is proposed to be taken is not a public use but is a private use; that petitioner is, in fact, only an instrumentality of the Pennsylvania Railroad Company and the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company, and that said railroads having under their charters selected a location for their main tracks, the power of location is exhausted, and such railroads cannot thereafter re-locate their railroad on account of matters pertaining to their own convenience and operation of the railroad, and cannot cause to be created a dummy railroad for the purpose of acquiring a right of way for the use and benefit of the former companies, and

they cite *Roy* v. *Commerce Com.* 322 Ill. 452, which they claim is a case exactly similar in its facts to the present one and therefore conclusive of the present contention. The facts in the *Roy case* are very similar to those of the present case, with, however, an important distinction. Appellant's right of way is sought for use in interstate commerce, and it has obtained from the Interstate Commerce Commission a certificate of public necessity and convenience and an order of that body authorizing it, the Pennsylvania Railroad Company and the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company to issue the bonds, construct the railroad and operate it in the manner in which it is stated in appellant's petition it is proposed to operate it. The vital question in this case which was not in the *Roy case* is, therefore, What effect must be given by the State courts to the certificate and orders of the Interstate Commerce Commission in the premises?

Appellees' contention that because appellant does not itself intend to engage in the carrying of freight or passengers it will not be engaged in interstate commerce cannot be maintained. Railroad rights of way and railroad tracks are just as necessary for the carrying on of interstate commerce by railroads as railroad trains and railroad companies. The proposed use of appellant's road, as set forth in its petition, would make it an instrumentality of interstate commerce and render it subject to the rules governing the same as they are found in the constitution of the United States, the laws of Congress and the edicts of the Interstate Commerce Commission. The second paragraph of article 6 of the constitution of the United States provides: "This constitution and the laws of the United States which shall be made in pursuance thereof * * * shall be the supreme law of the land; and the judges in every State shall be bound thereby; anything in the constitution or laws of any State to the contrary notwithstanding." By the third clause of section 8 of article 1 of the same con-

stitution Congress is declared to have power to regulate commerce among the several States. This power is complete, exhaustive and paramount and is not subject to interference by any State or municipality. In *Houston, East and West Texas Railway Co.* v. *United States,* 234 U. S. 342, it is said: "Wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the State, that is entitled to prescribe the final and dominant rule, for otherwise Congress would be denied the exercise of its constitutional authority, and the State, and not the Nation, would be supreme within the national field." This power of regulation may be exercised, among other things, in matters of rates, issuance of securities, the control of one railroad by another, and the construction of extensions and of new lines. (*Railroad Com. of Wisconsin* v. *Chicago, Burlington and Quincy Railroad Co.* 257 U. S. 563; *State of New York* v. *United States,* id. 591; *Dayton-Goose Creek Railway Co.* v. *United States,* 263 id. 456; *Railroad Com. of California* v. *Southern Pacific Co.* 264 id. 331; *Alabama and Vicksburg Railway Co.* v. *Jackson and Eastern Railway Co.* 271 id. 244.) The exclusive jurisdiction of Congress, and of its agency, the Interstate Commerce Commission, to regulate interstate commerce and the instrumentalities of such commerce has been recognized by this court in *Marion and Eastern Railroad Co.* v. *Missouri Pacific Railroad Co.* 318 Ill. 436, and *People* v. *Illinois Central Railroad Co.* 324 id. 591.) In the latter case there will be found an exhaustive resume of the authorities bearing upon the questions here involved and upon the effect of the orders and findings of the Interstate Commerce Commission.

If the right of way here sought to be condemned were for the use of an intrastate railway then a different question might arise as to appellant's right to invoke the sovereign power, as such railways are subject to the Illinois

Commerce Commission, while interstate railways are expressly exempted from its control by paragraph 109 of chapter 111A of Callaghan's Statutes.

Neither can this court hold that the use for which the land sought to be taken is to be subjected is a private and not a public use. The Interstate Commerce Commission has specifically found that public necessity and convenience require the building of appellant's road on this location. Under the decisions of the Supreme Court of the United States a State court is without jurisdiction to set aside, modify or nullify the finding and order of the Interstate Commerce Commission, such jurisdiction being vested solely in the Federal courts. Judicial Code, secs. 208, 211, chap. 32, 38 Stat. L. 219; *Illinois Central Railroad Co.* v. *State Public Utilities Com.* 245 U. S. 493; *North Dakota* v. *Chicago and Northwestern Railway Co.* 257 id. 485; *Texas* v. *Interstate Commerce Com.* 258 id. 158; *Lambert Run Coal Co.* v. *Baltimore and Ohio Railroad Co.* 258 id. 377; *Robinson* v. *Anderson,* 121 id. 522; *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.* 185 id. 282; *Devine* v. *Los Angeles,* 202 id. 313; *Venner* v. *Michigan Central Railroad Co.* 271 id. 127; *State of Colorado* v. *United States,* id. 153.

The action of the county court in dismissing appellant's petition in effect annulled and set aside the orders and certificate of necessity and convenience of the Interstate Commerce Commission. This it did not have jurisdiction to do. The judgment of the county court must therefore be reversed and the cause remanded to that court, with directions to enter an order overruling the motion to dismiss appellant's petition.

*Reversed and remanded, with directions.*