(No. 22475—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* ORAL RYAN *et al.* Appellants.

*Opinion filed June 20, 1934.*

G. F. Taylor, and John N. Zimmerman, for appellants.

Otto Kerner, Attorney General, and Paul Taylor, for appellee.

Mr. Justice Herrick delivered the opinion of the court:

The Department of Public Works and Buildings, (hereinafter called the Department,) appellee, on November 29, 1933, filed its petition in eminent domain in the circuit court of Effingham county against the appellants (hereinafter called the defendants) seeking to condemn three different tracts of land, referred to in the petition as tracts 1, 2 and 3. Tract 1 is owned by the defendant Belle Erwin. Tract 2 is owned by Belle Erwin and the defendant Nettie Harding Smith. Tract 3 is owned by the defendants Oral Ryan and Stella Ryan. Later an amended petition was filed, on which the cause was tried. By its amended petition the petitioner seeks to acquire an irregularly-shaped strip of land of the maximum width of 8.2 feet and containing .006 of an acre of land off of a city lot owned by

Belle Erwin; an irregularly-shaped strip of land of the maximum width of 20.6 feet and containing .03 of an acre off the south side of a city lot owned by Belle Erwin and Nettie Harding Smith; and a strip of land 80 feet wide and 998 feet long, and also a large irregularly-shaped piece of ground having a maximum width of 167 feet, all owned by the two Ryans. The total acreage sought to be condemned in tract 3 is 1.34 acres. Tracts 1 and 2 face south on Fayette avenue. There was no street, thoroughfare or public way through or on the Ryan land at the time of the filing of the petition.

To the amended petition the defendants filed their general and special demurrer, by which they challenged the right of the Department to condemn the lands in question. The demurrer was overruled. The defendants then made their motion to dismiss the proceeding upon the ground that the Department had no legal authority to acquire the lands of the defendants by eminent domain, inasmuch as all of the lands are situated within the city of Effingham. Evidence was heard on the motion, and it was also stipulated that each of the tracts of land sought to be condemned is located within the municipal boundaries of the city of Effingham. The motion was denied. A trial before a jury was had and verdicts returned assessing damages in favor of the defendants. The motion for a new trial made by the defendants was overruled and judgments were entered on the verdicts. From such judgments and the order denying their motion to dismiss the amended petition the defendants prosecute this appeal.

The issues raised by the assignment of errors are: (1) The legal right of the Department to condemn the lands in question; (2) the rulings of the court upon the evidence and the modification of certain instructions requested by the defendants; and (3) whether the amount of damages assessed is adequate and whether such verdicts are contrary to the manifest weight of the evidence.

Route 11 is one of the durable, hard-surfaced roads authorized by the $60,000,000 bond issue provided by the act of the legislature approved June 22, 1917. (Smith's Stat. 1933, chap. 121, pp. 2527-2534; Cahill's Stat. 1933, pp. 2432-2438.) The road was constructed several years ago and was then located and routed through Effingham. As originally located by the Department, Route 11 entered the city from the west on West Fayette avenue, continued east thereon for nine blocks to Banker street, thence north on Banker street two blocks to Jefferson street, and thence east on Jefferson street to the easterly city limits. The Department alleges that in order to eliminate the turns and angles in the route and to avoid passing through the congested business district it re-located a portion of the route through Effingham by abandoning the formerly used route from the intersection of Banker street and Fayette avenue and re-located the route to run from such street intersection easterly on Fayette avenue to the lands of the Ryans, and thence, by opening a new street through the Ryan lands, to the city limits, and to connect with Route 11 at the point where it proceeds east from the east city limits. East Fayette avenue narrows as it passes the property of Erwin and Smith. To widen the avenue at this point it is sought to acquire tracts 1 and 2. The irregular tract taken as a part of tract 3 is used for the purpose of obtaining dirt for grading and for the bettering of drainage, and it is claimed by the Department that such use will give an intersection affording better visibility to travelers. If it should be held that the Department is without authority to condemn the lands in question then the other errors assigned disappear.

The Department bases its right to condemn upon certain provisions of the act of 1917 and "An act in relation to State highways," approved June 24, 1921, (Cahill's Stat. 1933, chap. 121, pp. 2448-2453; Smith's Stat. 1933, pp. 2547-2552;) the provisions of section 2 of the Eminent

Domain act, (Cahill's Stat. 1933, p. 1342; Smith's Stat. 1933, p. 1383;) and certain other sections and provisions of chapter 121 which are referred to herein later.

It is contended by the defendants that there is nothing contained in the provisions of any such statutes which gives the Department the power of eminent domain within the boundaries of any incorporated city or village; that the act entitled, "An act in relation to the construction of durable hard-surfaced roads in cities, villages and towns and making an appropriation therefor," approved June 11, 1925, (Laws of 1925, p. 530,) was specifically repealed by House Bill 270. Laws of 1931, pp. 807-810; Smith's Stat. 1933, chap. 121, pars. 288a-288b, p. 2546; Cahill's Stat. 1933, p. 2459.

The issue here raised has heretofore never been passed upon by this court. It involves the construction of different sections of the different legislative acts pertinent to the question presented. In the interpretation of such statutes we are guided by certain fixed rules of law relative to the construction of statutes. The power to exercise eminent domain is inherent in the State. Section 13 of article 2 of our constitution does not confer such power but recognizes that such power is in the State. Section 13 is a restraint and limitation placed upon the exercise of this power as against the right of the private citizen except in those cases where public necessity requires the taking of private property for public use, and such property can then be taken only by the payment of just compensation. (*Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad*, 305 Ill. 388; 10 R. C. L. sec. 9, p. 11.) The right of eminent domain by any corporation or department of the government, as distinguished from the State or sovereignty, can only be exercised when such grant is specifically conferred by legislative enactment, and then only in the manner and by the agency so authorized. (*St. Louis Connecting Railroad Co.* v. *Blumberg*, 325 Ill. 387; *Illi-*

*nois Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 208 id. 419.) The private property of the owner can only be taken against his will by strict conformity with the law granting the right of eminent domain. (*Chicago and Northwestern Railway Co.* v. *City of Chicago,* 132 Ill. 372.) The legislature has the power to confer the right of eminent domain, but it is the province of the court to determine whether such grant of power has been made and whether it is exercised within the grant. (*Illinois Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co. supra.*) The construction to be placed by the court upon any law purporting to authorize the taking of private property for public use is one of strict construction. (*Ligare* v. *City of Chicago,* 139 Ill. 46; *Harvey* v. *Aurora and Geneva Railway Co.* 174 id. 295; *Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 id. 609.) The Department of Public Works and Buildings is merely a governmental agency of the State created by legislative act and has no power or authority beyond that conferred upon it by the legislature. *Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh, supra.*

The city of Effingham possesses the power to establish and lay out streets within its borders by virtue of the legislative act particularly giving to it such authority. (Smith's Stat. 1933, chap. 24, art. 5, sec. 7, p. 339; Cahill's Stat. 1933, p. 324.) The Eminent Domain act, standing alone, cannot be held to grant to a State agency the power to establish and lay out streets, or to alter or change the same, within the territory of another municipality already possessing the same power herein claimed by the Department. The system of State highways embraces (1) State hard roads; (2) highways built at the joint expense of State and county; (3) all highways constructed under the State bond issue acts of 1917 and 1923 within cities, villages and towns by the act of 1925, repealed in 1931; (4) all highways constructed or authorized by the State and Federal

governments and known as Federal aid roads; (5) all State highway extensions in cities, towns and villages authorized by the provisions of sections 6*a*, 6*b*, 6*c*, 6*d* and 6*e* of the act of 1931, hereinafter referred to; (6) all highways hereafter added to and included within such system pursuant to the same act; (7) all highways heretofore constructed under the act of 1925 for which refunds to certain cities, villages and towns have been made; and (8) all belt line routes authorized by section 6*f* of the act of 1931. Cahill's Stat. 1933, chap. 121, par. 200, pp. 2448-2449; Smith's Stat. 1933, p. 2548.

It is argued by the Department that subdivision 12 of section 6 of the act of 1921, (Cahill's Stat. 1933, p. 2449; Smith's Stat. 1933, p. 2549;) which states, "to do and perform whatever may be necessary or desirable to effectuate the provisions of this act," is sufficient to grant to the Department, by implication, the power to condemn. We cannot agree with this contention. The law is reluctant to grant to any branch of the State the power to interfere with the internal affairs of any other branch of the State or municipality created by the laws of the State. The laying out, establishment and control of streets and thoroughfares within a city, town or village are functions peculiarly within the powers of such municipal corporations. Such functions should not be molested by any outside authority unless such privilege is expressly granted to it.

Section 11 of the Sixty Million Dollar Bond Issue act of 1917 grants to the Department, in the making or location of a route, the power of eminent domain. (Cahill's Stat. 1921, p. 3019.) Section 9 of the act of 1921 granted like powers of eminent domain. (Cahill's Stat. 1921, p. 3022.) This latter section was amended by the act of July 8, 1927, but the amendment makes no substantial change as applied to the case at bar. Neither of these sections specifically provided for the location of roads through incorporated towns and villages, and it is obvious that such right of eminent

domain related to highways or roads themselves outside of such municipality. Section 9 uses the term "highway." The term "street" or "thoroughfare" is not used. The term "highway," in the common understanding of that word, signifies a country road as distinguished from a "street," meaning a city or town thoroughfare. 7 Words & Phrases, p. 188; *Village of Glencoe* v. *Hurford,* 317 Ill. 203; *Mac-Gregor* v. *Miller,* 324 id. 113; *Mushbaugh* v. *Village of East Peoria,* 260 id. 27.

The act of 1925, by which the Department was authorized and directed to construct and maintain durable, hard-surfaced roads within the corporate limits of cities, villages or towns within the routes designated as Routes 1 to 46, inclusive, provided by the act of 1917, and to widen the pavement in those cases where such routes were paved of less width than the route was paved outside of the municipality, and by which act it was further provided that as between the corporate authorities and the Department the road might be constructed of greater width, the municipality paying such excess cost and maintaining such additional width at its own expense, was repealed in 1931. Sections 6a, 6b, 6c, 6d, 6e and 6f were added. Smith's Stat. 1931, chap. 121, pp. 2562-2563; Cahill's Stat. 1931, pp. 2455-2456.

The act of 1925 was held in *MacGregor* v. *Miller, supra,* to confer upon the Department authority to construct and maintain durable, hard-surfaced roads within the corporate limits of cities and villages on the routes named in the act of 1917 where a route entering a city, village or town was not paved so as to make a continuous hard-surfaced road through the municipality, such hard-surfaced road to be constructed upon the route of such street as the Department in its discretion deemed the safest and best route for the requirements of the persons using the same. In the case of *Village of Glencoe* v. *Hurford, supra,* the court reviewed the several highway acts of 1913, 1917, 1921 and

1923 and the City and Village act as applied to the control of streets and thoroughfares within a city, town or village, and held that the power given by the latter act to lay out, establish, vacate and widen streets was a direct grant to such municipalities and that the cities and villages had not lost such power by reason of anything contained in other acts. Section 6b was amended in 1933. Smith's Stat. 1933, p. 2549; Cahill's Stat. 1933, p. 2450.

It is urged by the Department that section 6a and section 6b, and sections 7, 8 and 9 of chapter 121, (Smith's Stat. 1933, pp. 2549-2550; Cahill's Stat. 1933, pp. 2450-2451;) when properly construed, support the claim of the Department as to its right to condemn the property in question. Sections 6a and 6b are as follows:

"Sec. 6a. In all cases where State or through traffic upon a State bond issue or Federal aid road runs through a city, town or village the Department of Public Works and Buildings shall locate a route upon the streets or other thoroughfares through such municipality as an extension of such State highway so as to form a continuous route to serve the needs of through or State traffic upon such State bond issue or Federal aid road and if a city, town or village is the terminus of such a road, the road shall be extended to such point in the municipality as will in the discretion of the Department best serve the needs of State or through traffic.

"Sec. 6b. When any such State highway extension has been designated, it shall be the duty of the Department to supervise any construction or re-construction performed on such streets or thoroughfares by the municipality with funds received from the State. The Department shall maintain all streets designated as State highway extensions. Such construction, re-construction and maintenance shall be either with or without continuous grade separation and of such type and width as is required, in the judgment of the Department, to care for traffic and parking needs."

Section 7, so far as we deem it to be pertinent to the issues herein, provides for the taking over of certain highways from towns and road districts, cities, villages and incorporated towns by the Department as rapidly as appropriations permit, with the provision that State aid roads should be first taken over. Such section further provides: "Before any highway, or part thereof, on which no durable hard-surfaced improvements have been started or completed * * * is taken over the Department * * * shall notify in writing the commissioner of highways * * * or the mayor of the city, * * * as the case may be, of its intention so to do, and of the date when it will assume the maintenance and care thereof," etc. The section further provides that whenever any portion of a highway forming part of the State highway system which is within any city, village or incorporated town is taken over by the Department it shall have exclusive jurisdiction and control thereof. Section 8 provides, in substance, that when such portion of a highway has been taken over, it shall thereafter be constructed, re-constructed and maintained by the Department.

"'Thoroughfare' means, according to its derivation, a street or passage through which one can fare (travel) ; that is, a street or highway affording an unobstructed exit at each end into another street or public passage." Black's Law Dict. (3d ed.) p. 1728.

"The word 'street', defined by Webster to be 'city road', is a generic term and includes all urban ways which can be and are generally used for travel. It is a highway free for all, maintained not for private gain but for public benefit. It may include a bridge which is a part of it, or a mere *cul-de-sac,* or a boulevard, and while it does not include a mere private way, it does include all the public roads or ways within the municipality over which it has jurisdiction and as to which it owes the public the duty of exercising reasonable care to maintain them in a reason-

ably safe condition for public use." 7 Words & Phrases, (3d ed.) 188; *Carlin* v. *City of Chicago,* 262 Ill. 564.

It is quite apparent that sections 6*a* and 6*b* relate to streets and thoroughfares then existing at the time of the location or re-location of a route by the Department and not to the establishment and laying out of new streets and new thoroughfares within the city limits. It is also obvious that the Department, at and prior to the institution of the present proceedings, relied upon section 7 as authorizing the present procedure. The record shows it gave written notice to the mayor of Effingham, under the provisions of section 7, that it was the intention of the Department to take over the property here sought to be condemned by re-locating Route 11 thereon. Section 7 does not apply in those cases where the streets sought to be taken over are not in existence, nor to private property sought to be added to or made a part of a street already in existence. Section 8 pertains to "highways," as that term is ordinarily understood. It may relate to highways already improved by some corporate authority other than the Department, or to dirt roads directly taken over by the Department. It does not embrace streets or thoroughfares within a city, town or village. We have heretofore discussed section 9, and we hold that it did not grant to the Department the authority claimed, to take by eminent domain the property here sought to be acquired.

Section 6*f* relates to belt lines. It is not contended by the Department that it is seeking to construct a belt line. The section was apparently passed for the relief of congested traffic in municipalities where local traffic interferes with through or State traffic, but such section does not meet the conditions disclosed by the instant record. To give to the several statutes the interpretation claimed by the Department would be to permit it to lay out and create streets on private lands, and thereby impose on a city, town or village the possible duty of lighting such new streets.

It is also possible that the Department might later conclude to abandon such new street and re-locate it on some other street or thoroughfare, with the result that a municipality might have turned back to it a street which it had had no voice in establishing and which it might be under obligation to maintain, with the burdens incident thereto, in the future.

If the legislative intent had been to confer upon the Department, after it had located a route of the State highways through a city, village or town, the authority to re-locate such route, and as a part of such re-location to create a new street or thoroughfare and take the private property of the citizen against his will, the legislature could have expressed such intent by a clear and specific statute to that effect. This court will not by judicial construction, in the absence of a clear expression of the legislative will, take from a city, town or village the privilege which now rests with it exclusively to lay out and establish new streets and thoroughfares within its corporate limits. The power to take from a citizen his property without his consent, by process of law, for public use, is a power fraught with grave responsibility. Only where such power is explicit and definitely granted by legislative enactment can such power be exercised. If traffic conditions within the city of Effingham are so congested as to interfere with State and through traffic, the Department has a remedy by causing a belt line to be constructed under section 6f.

Our holding herein makes it unnecessary to consider the other assignments of error.

The judgments of the circuit court are severally reversed and the cause is remanded, with directions to dismiss the amended petition.

*Reversed and remanded, with directions.*