(No. 22839.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* ADOLPH L. SCHLICH *et al.* Appellants.

*Opinion filed February 21, 1935.*

House & House, June C. Smith, and H. V. Murray, Jr., for appellants.

Otto Kerner, Attorney General, J. Paul Carter, and A. W. Tharp, for appellee.

Mr. Justice Stone delivered the opinion of the court:

Appellee, the Department of Public Works and Buildings, brought this action in the circuit court of Washington county to condemn the lands of appellants for a right of way for the construction of a portion of the State hard road No. 177. On hearing, the right of the department to condemn the lands in question was sustained and compensation and damages were fixed.

The only question involved in this appeal is the right of the department to locate the route over appellants' lands. Appellants say that Route 177, in so far as involved in this proceeding, has been laid out over other lands, has been accepted as so laid out and large sums of money expended on contracts let for its improvement, and that the department is therefore without power to so change the route as to extend it over appellants' lands.

There is but little dispute in the facts. Route 177 is one of those provided for in the One Hundred Million Dollar Bond Issue act. That act provides for the construction of a hard-surfaced road "beginning at Okawville, running thence to New Minden and to a connection with Route 153." New Minden is located approximately one mile north and ten miles east of Okawville, in Washington county. Route 15 extends across Washington county in a general westerly and northwesterly direction toward East St. Louis. It passes in a general westerly direction through Nashville, thence northwest to a point approxi-

mately one mile south of Okawville, where the road turns north into the southern part of Okawville, on Front street, and thence west. Route 177 is to join Route 15 on Front street, in Okawville. The following plat shows the situation to which the record of this case pertains.

The broken line extending west through section 16 and south into Okawville, called in this record the "North route," is the route for which the condemnation proceedings here under consideration were instituted. The double line extending in a southwesterly direction across a portion of sections 15, 16 and 21, entering Okawville from the east, and called in this record the "East route," is the route which had been adopted by the department and upon which a sum totaling something over $18,000 has been expended. The irregular lines appearing in the plat denote the boundaries of Okawville and a settlement east of the northern part of Okawville known as Pinch. Plum creek passes through this territory in a general northwesterly direction, flowing into the Kaskaskia river a few miles northwest of Okawville. Route 177 west from New Min-

den has been completed up to the point of divergence in the western part of section 15, and no question is raised as to that part of the road.

Appellee's counsel say that, even before the selection of the East route, approval of the North route had been given by the State's engineers. The evidence shows that in locating a highway between various termini mentioned in the statute it was the practice of the engineering department of the division of highways to first make a reconnaissance survey. This consists of a general inspection of the country through which the road is to extend, usually accomplished by driving over various routes in automobiles, measuring the distance by the speedometer of the automobile. Where not feasible to use an automobile this survey is made on foot. A rough estimate of the cost of bridges, fills and other factors is made. When this has been done the engineer in charge draws maps of the various routes, showing their location and in a general way the distances and factors to be considered. When this has been done these maps are submitted to the chief engineer and the director of the department, who endorse their initials upon the plat showing the route which from the data then on hand seems to them most feasible. After these original inspections of the proposed routes the people of the communities interested in a proposed route demonstrate their interest by securing deeds to right of way and raising funds for the purpose of meeting the expense of compensation settlements or condemnation suits where necessary to procure the right of way. In this case the original reconnaissance survey was made in 1928. Three routes were indicated, as shown by the maps, the East route and the North route being among them.

On March 24, 1931, the director of the department and the chief highway engineer entered an order officially locating the road over the East route. The order recited: "Having investigated all of the proposed locations for

State Bond Issue Route 177 from Okawville to State Bond Issue Route 153, and having held a final hearing, the Department of Public Works and Buildings announces the choice of the location described below for State Bond Issue Route 177 between the points named." There follows in this order a description of the route known in this case as the East route. To this order was attached a plat showing only the East route.

It appears from the evidence that the plat showing the North route, and originally initialed by the chief engineer, was made from the original reconnaissance survey, and that no other map of that route had been made when the order of March 24, 1931, was entered and when the actual location of the road appears to have taken place. Prior to that date individuals interested in the location of the road over each of these routes procured deeds for the right of way in so far as they were able to do so. The deeds for the right of way over the North route were never delivered to the department but appear to have been procured in an effort to induce the department to select that route. After March 24, 1931, the citizens of the community in and around Okawville were directed by the department to obtain the necessary right of way for the construction of a highway over the East route. This was done in part by voluntary conveyances, and as to four land owners with whom no agreement could be reached a fund was, at the suggestion of the department, raised by the citizens of that community to meet the expense of condemnation proceedings, and the department in February, 1932, caused suit to be filed in the county court of Washington county to condemn the right of way for this East route over the lands of those who had not deeded it. The suit proceeded to a hearing and judgment was entered therein on July 1, 1932. By that judgment the court specifically found from the evidence submitted that the department had located the highway over the East route and was authorized to

construct it over that route. This was a part of the case made by the department to show its right to maintain the suit. Compensation and damages awarded in that case amounted to something over $2500. This was paid by funds raised by the people of the local community. Other expenses in the form of court costs and procuring voluntary conveyances brought the total sum raised by the people of the community to between $3500 and $3600. Thereupon the department advertised for bids for the construction of the highway from Okawville to New Minden over the East route. A contract was entered into for the construction of a bridge across Plum creek for the sum of $17,325.50. Contracts were also entered into for the construction of culverts, grading and slab work at a total cost of $128,329.60, and work was begun under those contracts.

The road was completed from New Minden west to the point of divergence, as shown on the accompanying plat. From that point southwest to Okawville, culverts, seven in number, and a cattle-pass, were all constructed. The bridge contractor completed one of the abutments for the large bridge over Plum creek and a large amount of piling was driven for the other abutment. Much grading and filling had been done, when in February, 1933, by order of the department, all work on this route was suspended. At that time the work accepted amounted to $18,681.20, all of which was paid, with the exception of a deduction of ten per cent retained by the State under the contract, awaiting completion of the work. Thereafter the department sought to change the location of this part of Route 177 from the East to the North route. On January 19, 1933, the department addressed a letter to the Attorney General inquiring whether it had power to make this change. On January 25, 1933, the Attorney General gave to the department an opinion holding that it was without power to change the location from the East to the North route unless it could be established that factors had intervened

or had become apparent since the location of the East route which would, in the exercise of the discretion of the department, be regarded as sufficient ground for varying the route theretofore selected. Thereafter, on March 18, 1933, the department again submitted the same question upon same facts to the Attorney General and also asked whether the department has a right to acquire right of way on the North route by eminent domain. On April 7, 1933, the Attorney General gave to the department another opinion definitely advising it that it was without power to change the location, and that it could not acquire the right of way of the North route by eminent domain because it had already exhausted its power by locating the road and acquiring the right of way over the East route. On May 31, following, in response to a telephone inquiry in which a Missouri case was cited, the Attorney General gave a third opinion reviewing the two prior opinions and the case cited to him and again definitely advising the department that he had reached the conclusion that it had exhausted its power to locate the highway as well as its power of eminent domain. Notwithstanding these three opinions, and notwithstanding what had been done by the department and the citizens who raised funds to pay the cost of condemnation, the department on March 7, 1934, entered upon its records an order purporting to amend the order of March 24, 1931, and by such amendment to change the location of the route from the East to the North route. It does not appear, nor is it claimed, that there has been any change of conditions on either of these routes affecting the feasibility thereof since the location of the road over the East route. For reasons undisclosed in this record the department decided to abandon the East route, and the construction work done and money expended thereon, and to relocate the highway on the North route. This suit was filed, in pursuance of that plan, to acquire the right of way over appellants' lands. There are involved herein five

tracts of land, consisting of something over one-half the necessary right of way for the construction of the highway on the North route.

The motion filed by appellants traversing the allegations of the petition and to dismiss it set out the facts hereinbefore stated and others unnecessary to detail here. It set out that the engineering problems were no different; that the proof showed that the North route is about three-tenths of a mile longer than the East route, and that it is unnecessary to take the lands of appellants for this North route because a suitable and proper way had already been procured over the East route. The petitioner filed a motion to strike the motion of appellants to dismiss. These motions were heard together and evidence heard thereon. After taking the cause under advisement the court entered an order denying the motion to dismiss and sustaining the motion to strike, expressly finding that the department had a right to re-locate the highway on the North route and acquire the necessary right of way therefor by eminent domain.

The question here is clear-cut, and is whether the department can, after proceeding in the manner and to the extent herein detailed, select and locate another route and procure another right of way where nothing has developed to show any new engineering problems or lack of feasibility on the route selected. It would seem this question should not require lengthy discussion. Counsel for appellee say that the bridge across Plum creek on the East route must be built at an angle while on the North route it would cross at right angles, and that the North route has only one curve and is therefore safer. None of these conditions, however, are shown to be in any way different from what they were at the time the department, on consideration of all the routes, selected the East route. The evidence does not show an appreciable difference in the cost of the bridges. It does show that a substantial part of the construction

of the bridge on the East route has been completed and paid for. The evidence shows that the East route will require approximately one-third of a mile less slab.

Counsel for appellee also argue that the turn in the village of Okawville by which the East route is to connect with Route 15 is a sharp turn, and that the department has no power to condemn the land in the village of Okawville to widen that turn. It may be observed that Route 177 joins Route 15 on Front street of the village of Okawville and becomes the same as the junction of any two State highways on a street of a municipality. It is deemed there will be such observance of speed and other traffic regulations within the municipality as to render wide-sweeping turns unnecessary. This point is utterly without merit.

Counsel argue, also, that this is but a minor change in the location of the route, and that the department has a right to exercise its discretion in such a matter. It is also said that there has not been here an abuse of that discretion on its part. In the recent case of *Department of Public Works* v. *Ryan,* 357 Ill. 150, it is recognized that the power to exercise eminent domain is inherent in the State. It is not conferred by the constitution but is by the constitution recognized and limited. Section 13 of article 2 of the constitution is a limitation upon the exercise of that power to those cases where public necessity requires the taking of private property for public use, and specifies that such property may then be taken only by payment of just compensation. The right of eminent domain by any corporation or department of government, as distinguished from the State or sovereignty itself, can only be exercised when such grant is specifically conferred by legislative enactment, and then only in the manner and by the agency so authorized. (*Department of Public Works* v. *Ryan, supra; St. Louis Connecting Railroad Co.* v. *Blumberg,* 325 Ill. 387; *Illinois Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 208 id. 419.) The De-

partment of Public Works and Buildings is but a governmental agency of the State created by the General Assembly and has no power other than that conferred upon it by that body. *Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 Ill. 609.

It has been held by this court that there is necessarily vested in the Department of Public Works and Buildings some discretion as to the location of the roads which make up the hard road system of the State, and it is empowered to use that discretion in making minor changes in the routes which have been in a general way specified by statute, (*Department of Public Works* v. *Spanogle,* 327 Ill. 122,) but it has likewise been held that any arbitrary action in determining the location of a route for a hard road may be restrained. (*Hitt* v. *Department of Public Works,* 336 Ill. 306.) The only changes authorized, and as to which the Department of Public Works may exercise discretion, are minor changes.

Appellee's counsel argue that it is not required to make proof of necessity for the change but that its action is conclusive except for a gross abuse of discretion. Proof of necessity goes to and is necessarily required on the question whether such discretion has been abused. In the instant case, in our opinion there was an abuse of discretion. As we have heretofore indicated, no reason appears in the record why this change should be made. Little argument is offered that the North route is better, yet, notwithstanding three opinions of the Attorney General showing clearly that the department had exhausted its power to re-locate this portion of Route 177, and notwithstanding the efforts and expense of the people of this community, expended in good faith and on the requirement of the department, to meet the expense of securing the right of way over the East route and the expenditure of the department of some $18,000 in constructing the road over this route, this attempt is made under the offered justifi-

cation that such is not an abuse of discretion vested in the department. We do not agree with this position. When the department, after considering various routes, decided on the East route, entered into contracts, expended public money and induced citizens to raise more than $3500 for acquiring right of way, common sense and fairness require the holding that the department has exhausted its discretion in the matter. True, the department may widen a road already laid or widen the curve in a turn where necessary, and may in proper cases condemn private property if necessary to such purpose, but no such question arises here.

The judgment of the circuit court of Washington county is reversed and the cause remanded, with directions to dismiss appellee's petition.

*Reversed and remanded, with directions.*