### UNITED STATES v. SIXTY ACRES, MORE OR LESS, OF LAND IN WILLIAMSON COUNTY, ILL., et al.

### SAME v. FORTY ACRES, MORE OR LESS, OF LAND IN WILLIAMSON COUNTY, ILL., et al.

#### No. 3058 and Civil No. 67.

District Court, E. D. Illinois.

July 13, 1939.

Arthur Roe, U. S. Atty., of Danville, Ill., G. R. Schwarz, Sp. Atty., Department of Justice, of Jerseyville, Ill., for the United States.

·George W. Dowell, of DuQuoin, Ill., for the defendants.

WHAM, District Judge.

These are condemnation suits now before the court upon the motions of certain defendant landowners and next of kin of persons buried on the land to dismiss the petitions for condemnation. The suits have been brought by the United States of America in connection with the program being carried out by the Department of Agriculture under the authority of Title 2 of the National Industrial Recovery Act, 48 Stat. 200 et seq., 40 U.S.C.A. § 401 et seq. and various Executive Orders thereunder. Directly involved here is the so-called Crab Orchard Creek Project which involves the construction of a dam that will impound the waters of Crab Orchard Creek in a lake several miles in area which will inundate the lands here in question, with others, including certain lands used for public cemeteries and other public uses.

The motions to dismiss are similar and may be summarized as follows:

1. The petition for condemnation does not state a cause of action.

2. The various Acts of Congress and Executive Orders cited in the petition do not authorize the Petitioner, the United States of America, to take lands already devoted to a public use for a purpose which is inconsistent with such use.

3. Public cemeteries are not subject to condemnation by the United States under its power of eminent domain.

4. The taking of lands upon which cemeteries are located is in violation of the Criminal Statutes of the State of Illinois.

The petitions for condemnation in these cases are substantially similar to each oth-

er and to those filed in a large number of other condemnation suits in connection with the same program. It may be noted, however, that in the amended petition in Law No. 3058 additional legislation, namely, the Weeks Law, 36 Stat. 961, 16 U.S.C.A. §§ 480, 500, 513 et seq., 552, 563, and the Clarke-McNary Law, 43 Stat. 653, 16 U.S.C.A. §§ 471, 499 note, 505, 515, 564 et seq., is relied upon. Then, too, in said amended petition it appears that part of the land sought is now occupied by a public cemetery.

It appears from each petition that the land is being sought to be taken under the power of eminent domain of the United States of America under the legislative provisions of Title II of an Act of Congress, approved June 16, 1933, 48 Stat. 200 et seq., § 201 et seq., 40 U.S.C.A. § 401 et seq., commonly known as the National Industrial Recovery Act, an Act of Congress approved April 8, 1935, 49 Stat. 115, commonly known as the Federal Emergency Relief Appropriation of 1935, and also certain specified Executive Orders made pursuant to said Acts and certain specified official acts thereunder of the Federal Emergency Administrator of Public Works and the Secretary of Agriculture of the United States; that pursuant to the foregoing laws and Executive Orders thereunder the Federal Emergency Administrator of Public Works, acting under the direction of the President, prepared a comprehensive program of public works with the concurrence of a Special Board of Public Works, which program included the acquisition of the land described in the petition, among other lands, for the establishment of and for use in connection with the Crab Orchard Creek Project of the Department of Agriculture, designated the Secretary of Agriculture as the acquiring authority and that money appropriated for the purposes and under the terms of the foregoing Acts of Congress has been duly allocated to the Secretary of Agriculture for the acquisition of said land and the establishment of said project. That pursuant to said authority the Secretary of Agriculture has duly selected for acquisition the land described in the petition for use in connection with said project and that said land is necessary in his opinion: "To provide for the reforestation and forestation of said land; to prevent soil erosion; to aid in flood control; to prevent forest fires; provide for the relief of unemploy-

ment by the erection and construction thereon and in connection therewith of useful public works, including truck trails, bridges, dams, ditches and other public works necessary to said project."

In view of the fact that the motion to dismiss involves the lawful right of the petitioner to proceed by way of condemnation under the law of eminent domain, the petitioner, under applicable law, has the burden of establishing its lawful right to proceed. To meet this burden the petitioner has introduced in evidence various authenticated documents, official letters and Executive Orders intended to prove that the proceedings have been lawfully authorized under specific statutory authority and lawful Executive Orders made and promulgated thereunder. The documentary evidence introduced by the Government is the same evidence that it introduced in the case of United States of America v. Eighty Acres of Land in Williamson County, Illinois, G. W. Kirk et al., D.C., 26 F.Supp. 315, and other cases which have arisen in connection with the condemnation of lands for use in the Crab Orchard Creek Project. The statutory law under which the United States of America is proceeding herein is set forth or referred to in some detail in my opinion written in the case of United States of America. v. 80 Acres of Land in Williamson County, Illinois, G. W. Kirk et al., supra. Repetition here is unnecessary. In my judgment the petition not only states a good cause of action but the proof is sufficient to show that the United States of America is proceeding in these cases under lawful statutory authority lawfully evoked and applied.

Adhering to my former opinion, after reconsideration of the question, I have no doubt that the use for which the land in question is being sought is a public use and one which the Federal Government has a constitutional and lawful right to institute for the public benefit. It would serve no useful purpose to repeat here the discussion of authorities on this point and the conclusions derived therefrom which are set forth with some care in my opinion in the Kirk case. After due reconsideration of the question, I feel bound to deny the motion to dismiss in so far as the motion attacks the general sufficiency of the petition and the right and power of the United States of America to condemn lands for the establishment of said project.

Other questions here raised by the motions to dismiss, namely, the lawful authority of the United States of America under the power of eminent domain and under the Acts of Congress and Executive Orders here relied upon to condemn and take lands already devoted to public use under the laws of the State of Illinois, for a public purpose which is inconsistent with its present public use and particularly the right of the United States of America under said Acts of Congress and Executive Orders to take lands upon which public cemeteries are located and which are being used, and for many years have been used, for public burial places were not specifically considered or dealt with in the Kirk case. The only question actually involved in these cases is the right to acquire lands used as public cemeteries since the attempt to acquire public highways or lands devoted to public uses other than cemeteries is not here being made.

■ The right of eminent domain is an attribute of sovereignty possessed by the United States as a sovereign government to enable it to perform its proper functions. Mississippi & R. River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; Kohl v. U. S., 91 U.S. 367, 23 L.Ed. 449; United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015; United States v. Certain Lands in the City of Louisville, 6 Cir., 78 F.2d 684 at page 687; James v. Dravo Contracting Co., 302 U.S. 134, 147, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318.

■ That the United States of America may acquire land by eminent domain whenever it is necessary or appropriate to use the land in the execution of any of the powers granted to it by the Constitution is established law. Kohl v. United States, supra; Cherokee Nation v. Kansas Ry., 135 U.S. 641, 656, 10 S.Ct 965, 34 L.Ed. 295; Chappell v. United States, 160 U.S. 499, 509, 510, 16 S.Ct. 397, 40 L.Ed. 510; United States v. Gettysburg Electric R. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576.

■ In taking land for a public purpose the United States exercises its own right of eminent domain, subject to the limitation of the Federal Constitution that private property shall not be taken for public use without just compensation, and does not proceed under the right of the State. Town of Nahant v. United States, 1 Cir., 136 F. 273, 69 L.R.A. 723; 18 Am.Jr. pp. 643-645.

■ "The right of eminent domain inheres in the Federal Government by virtue of its sovereignty and thus it may, regardless of the wishes either of the owners or of the States, acquire the lands which it needs within their borders. Kohl v. United States, 91 U.S. 367, 371, 372, 23 L.Ed. 449, 451." James v. Dravo Contracting Co., 302 U.S. 134 at page 147, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318. See also Chappell v. United States, supra, Kohl v. United States, supra.

■ The United States may acquire land by eminent domain whenever it is necessary or appropriate to do so in the exercise of the powers granted to it by the Constitution and the fact that a portion of the land is already devoted to a public use does not affect or impair this power. United States v. Gettysburg Elec. R., supra, 10 Ruling Case Law, p. 23-24, sec. 21; United States v. Jotham Bixby Co., D.C., 55 F.2d 317; Patten & Co. v. United States, 9 Cir., 61 F.2d 970; United States v. City of Tiffin et al., C.C., 190 F. 279.

In United States v. Gettysburg Electric R. Co., supra, the Court said: "Another objection taken in the court below though not decided by that court but which counsel for defendant in error now urges as an additional ground for the affirmance of the judgment is that the land proposed to be taken in this proceeding was already devoted to another public use, to-wit, that of the railroad company, and that it does not appear that it was the intention of Congress to take land which was devoted to another public use. The defendant in error concedes that is without doubt true that this is a question of intention simply. The power of Congress to take land devoted to one public use for another and different public use upon making a just compensation cannot be disputed."

■ While it is a well-recognized rule that land devoted to a public use may not be taken for another inconsistent public use under the power of eminent domain unless the intention of the legislature to that effect has been manifested in express terms or by necessary implication, this rule is ordinarily applied in grants of power to public service corporations and not where the power is being exercised by the State itself for its immediate purposes. United States v. Southern Power Co., 4 Cir., 31 F.2d 852 at page 856. This rule

is not applicable where the power of eminent domain is sought to be exercised by the United States or any sovereign power. United States v. Tiffin, supra; United States v. Jotham Bixby Co., supra; Patten & Co. v. United States, supra.

■ The clear distinction between the inherent power of eminent domain belonging to the sovereign and the power conferred by the sovereign upon its creature by legislative enactment has been pointed out by the Supreme Court of Illinois. Department of Pub. Works v. Ryan, 357 Ill. 150 at page 154, 191 N.E. 259; Department of Pub. Works v. Schlick, 359 Ill. 337 at page 345, 194 N.E. 587. The United States, with a constitutional purpose to achieve, expressed by appropriate legislation, requires no legislative authority to enable it, within constitutional limitations, to exercise its inherent power of eminent domain to acquire property devoted either to private or public use, in so far as its acquisition may be necessary or appropriate to the achievement of such purpose.

The rule that land devoted to a public use may not be taken unless the intention of the legislature expressly or impliedly appears was given a limited application to the sovereign in United States v. Southern Power Co., supra, where the acquisition of a right of way being used by a public utility was held to be unnecessary to the achievement of the sovereign purpose as expressed in the legislation and, therefore, presumably contrary to the intention of Congress in the absence of any express or implied provision for the acquisition of lands already devoted to a public use. The court said: "But it (the rule) is based, not upon any lack of power upon the part of the government, but upon the presumed intention of the Legislature, and should be held to apply in condemnation proceedings, even by the state itself, where the prior public use could not reasonably interfere with the purpose for which condemnation is authorized."

Obviously, I think, if the said land being used for right of way purposes had been necessary or essential to the achievement of the sovereign purpose as expressed in the legislation, it would have been presumed by the court that the Congress, knowing the sovereign possessed the inherent power of eminent domain, and knowing the general authority conferred upon the agents of the Government by Section 257 U.S.C.A. Title 40, intended that such land, though already devoted to a public use, might be acquired by condemnation though no provision was made therefor in the legislation.

■ A Congressional intention that the United States have the right to condemn any land necessary to the successful construction of the projects lawfully planned under the legislation here in question, even though such land already be devoted to a public use, is clearly apparent and necessarily implied. The dam across Crab Orchard Creek, which is necessary to the accomplishment of the Governmental purpose here, cannot be constructed and used without causing the impounded waters to cover and destroy for public uses the public cemeteries and all other lands being put to public uses within the area of the proposed lake. It has already been held that the project here being carried out is within the lawful provisions of the said legislation. It necessarily follows, therefore, that Congress intended by such legislation to confer the right to acquire by condemnation any lands that may be essential to the establishment of the project whether such lands be wholly private, or devoted wholly, or in part, to public uses. That intention appears from the very language used in the legislation, when the purpose and scope of the entire legislation is considered. Section 403 of Title 40 U.S. C.A. provides, in part, as follows: "The President is authorized and empowered through the administrator or through such other agencies as he may designate or create * * * (3) to acquire by purchase, or by exercise of the power of eminent domain, any real or personal property in connection with the construction of any such project, * * *."

It is conceded by counsel for the petitioner that land being used as a public cemetery or that has been dedicated to the public use as a place for the burial of the dead is being put to a public use within the meaning of the rule we have under consideration. Said counsel contend, however, that land being used as a cemetery, like land being put to any other public use is subject to the power of eminent domain of the United States. Counsel for movant contends that lands being used for cemetery purposes are not subject to being condemned even by the United States for an inconsistent use. No case decided by a United States court has been cited by ei-

ther party and it becomes necessary to determine the law from other authorities.

It is true, and universally recognized, that cemeteries and grounds for the burial of the dead are sacred places entitled to respect and to public and private defense against unwarranted trespass and invasion. Indeed, every civilized state, including Illinois, has laws, both civil and criminal, calculated to protect these homes of the dead from invasion and desecration. Nevertheless, both on principle and authority, the law seems to be that the use of a tract of land as a public cemetery or private burial ground cannot preclude the taking thereof by state or nation by power of eminent domain for a necessary public use or by a state in the reasonable exercise of its police power, even though such taking may require the removal of the bodies. Scanlan's Treatise on The Law of Church and Grave, p. 458; Am. & Eng. Enc. of Law (2d ed.) Vol. 5, p. 783; 6 Cyc. 715; 14 C.J.S., Cemeteries, § 25, page 85; Bessemer Land Improvement Co. v. Jenkins, 111 Ala. 135, 18 So. 565, 56 Am. St.Rep. 26; Partridge v. First Independent Church, 39 Md. 631, 637; In Matter of Board of Street Opening, etc., 133 N.Y. 329, 31 N.E. 102, 16 L.R.A. 180, 28 Am.St. Rep. 640; Campbell v. Kansas City, 102 Mo. 326; 13 S.W. 897; 10 L.R.A. 593.

The general rule here applicable is thus stated in Am. & Eng. Enc. of Law, 2d ed., Vol. 5, p. 783: "The fact that lands have previously been devoted to cemetery purposes does not place them beyond the reach of the power of eminent domain, but they are subject to the rule of law that the legislature may take lands already devoted to one public use for another and inconsistent public use. Accordingly, cemetery lands have been appropriated for highway purposes, railroads, and the like."

In 14 C.J.S., Cemeteries, § 25, at page 85 is found the following language: "A lot (burial) owner's title is a legal estate, and his interest is a property right entitled to protection from invasion, but only in a restricted sense does it constitute an interest in real property. The rights of the owner are subject to reasonable rules and regulations governing the cemetery, and to the police power of the state, in the exercise of which not only may future interments be prohibited but also the remains of persons theretofore buried may be removed. * * When by lawful authority the ground ceases to be a place of burial, a lotholder's right ceases, except for the purpose of removing remains previously buried."

That it must be the law that lawful governmental progress or functions cannot be stayed by giving public cemeteries a permanently inviolable locus perpetually beyond the reach of the sovereign power of eminent domain, whether exercised by state or government, is apparent to one who gives the subject any mature consideration. That such is the accepted law is apparent from the very fact that great governmental projects, like the Norris Dam in Tennessee, similar in their essential physical needs and results to the project here involved, could not and would not have been constructed had the law prevented the condemnation of public cemeteries and the removal of the bodies of the dead therefrom. See State of Missouri v. Union Electric Light & Power Co., 42 F.2d 692.

In Matter of Board of Street Opening, etc., 133 N.Y. 329, 31 N.E. 102, 16 L.R.A. 180, 28 Am.St.Rep. 640, the court, speaking to this point, by Earl, C. J., said: "The fact that lands have previously been devoted to cemetery purposes does not place them beyond the reach of the power of eminent domain. That is an absolute transcendent power belonging to the sovereign, which can be exercised for the public welfare whenever the sovereign authority shall determine that a necessity for its exercise exists. By its existence the homes and the dwellings of the living and the resting places of the dead may be alike condemned."

In Campbell v. City of Kansas, supra, the court said:

"If every portion of ground which has been made a burial place for man should be devoted in perpetuity for burial uses, the most populous and cultivated districts of the world, where millions upon millions of the human race have sunk into the earth in the countless ages of the past, would have to be abandoned as a dwelling-place or means of support to the living inhabitants of the present day. The devotion of land to any particular use must be subject to the changes and vicissitudes which time may bring to it. * * *

"There are also certain rights of sovereignty to which all land devoted to burial purposes must be subject. I allude to the right of eminent domain, and the right to

pass all reasonable laws and regulations for the health and welfare of the living. A constitutional exercise of these rights may terminate the use of a graveyard for all the purposes for which it was donated."

That the sanctity of the cemetery, though universally approved and respected, has never been permitted to cripple the sovereign in its vital needs is illustrated by the exciting historic fact, not applicable here, of course, as a legal precedent (being the exercise of a war power), that the public cemetery at Gettysburg, Pennsylvania, on "Cemetery Hill" was used by the Union Army as its pivotal point of defense against the invading army of General Lee, and the mounds and tombstones served as defenses to the Union soldiers against the gun fire of the enemy. One who fought there has vividly described the battle and its effect in the cemetery as follows:

"The Eleventh Corps—Gen. Howard—was posted at the Cemetery, some of its batteries and troops, actually among the graves and monuments, which they used for shelter from the enemy's fire, * * *

"How these quiet sleepers must have been astounded in their graves when the twenty-pound Parrott guns thundered above them and the solid shot crushed their gravestones! The flowers, roses and creeping vines that pious hands had planted to bloom and shed their odors over the ashes of dear ones gone, were trampled upon the ground and black with the cannon's soot. A dead horse lay by the marble shaft, and over it the marble finger pointed to the sky. The marble lamb that had slept its white sleep on the grave of a child, now lies blackened upon a broken gun-carriage. Such are the incongruities and jumblings of battle." The Battle of Gettysburg by Haskell, Vol. 43, Harvard Classics, 347–440 at pp. 358 and 437.

■ Without attempting here to delimit or state with precision the scope of the United States' power of eminent domain when sought to be exercised to acquire by condemnation land already being used for public cemeteries, it will suffice to say that it has the lawful power to acquire such land by condemnation whenever its acquisition is essential to the accomplishment of a lawful governmental purpose authorized by valid legislation. Having heretofore found that the acquisition of the land where the cemeteries here in question are located is essential to the successful establishment of the Crab Orchard Creek project and having held that the said project constitutes a lawful governmental purpose undertaken by the United States under valid legislation, I am compelled to hold further that the United States has the lawful power to condemn all lands essential to the accomplishment of its purpose, including the lands here in controversy being used as public cemeteries and burial grounds.

■ The criminal laws of Illinois enacted for the protection of cemeteries against unlawful invasion are not here applicable.

The motion to dismiss the petition must be and is hereby denied in each of the above cases.